792 F.2d 1492
 UNITED STATES of America, Plaintiff-Appellant,
v.
John Paul EDMONSON, Defendant-Appellee.
UNITED STATES of America, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the EASTERN DISTRICT OF
WASHINGTON, Respondent,
and
John Paul Edmonson, Defendant and Real Party in Interest.
UNITED STATES of America, Plaintiff-Appellant,
v.
Rosie KNOEB, Jorge Huerta, and Mary June Jimicum,
Defendants-Appellees.
UNITED STATES of America, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the EASTERN DISTRICT OF
WASHINGTON, Respondent,
and
Rosie Knoeb, Jorge Huerta, and Mary June Jimicum, Defendants
and Real Parties in Interest.
 Nos. 85-3029, 85-7337, 85-3104 to 85-3108 and 85-7500.
 United States Court of Appeals,
Ninth Circuit.
 Argued Jan. 10, 1986.
Submitted Jan. 31, 1986.
July 1, 1986.
 
 Maury S. Epner, Dept. of Justice, Washington, D.C., for United states.
 Kenneth W. Raber, Robert Inouye, Yakima, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before WRIGHT, CANBY and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 We have consolidated these cases, coming to us from the decisions of two district judges of the Eastern District of Washington, as they present the same question of law. The question we consider is the interrelationship of Sections 495 and 510 of Title 18, United States Code.
 
 
 2
 The predecessor of Section 495 was enacted in 1823. It punishes as a felony the forgery and alteration of specified documents "or other writing" for the purpose of defrauding the United States. The forgery of Treasury check endorsements is not specifically denounced in Section 495 but, at least since 1931, such forgery has been interpreted as coming under Section 495's "other writing" provision and made punishable as a felony by that section. Prussian v. United States, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931); cf. Roberts v. United States, 331 F.2d 502, 505 (9th Cir.1964).[1]
 
 
 3
 Section 510, enacted on November 14, 1983, deals exclusively and comprehensively with forgery and other criminal abuses relating specifically to Treasury checks, bonds and securities. It provides felony penalties where the face value of the instrument in question is over $500 and misdemeanor penalties when that value is $500 or less.[2]
 
 
 4
 The appellees were charged, in separate unrelated cases in the Eastern District of Washington, with the forgery of Treasury check endorsements of $500 or less in value in violation of Section 495. In each case the alleged forgery was committed before the enactment of Section 510. Knoeb was indicted before it was enacted; the others were indicted after it was enacted.
 
 
 5
 Each of the appellees at first pleaded not guilty. Later each withdrew the plea and pleaded guilty under Rule 11, Fed.R.Crim.P. The circumstances of those Rule 11 hearings, and of the later sentencing hearings, are of some significance. We therefore set out the facts in some detail.
 
 
 6
 In the chronology of events, Edmonson's case came first and was pivotal to what followed. In January 1985, he withdrew his plea of not guilty to the Section 495 indictment, was advised of the maximum penalties under that statute, and pleaded guilty. The issue of the enactment of Section 510 was raised at some time during the period between that hearing and the time set for his sentencing. In the belief that Edmonson's offense could now only be prosecuted under Section 510(c), the district judge invited him to withdraw his guilty plea to the charge in the Section 495 indictment. At the time set for sentencing the government attorney clearly stood on the Section 495 indictment that he had drafted. The district judge and counsel appear to have recognized that the legal situation was clouded; they discussed alternative methods of framing the issues for this court's review.[3] The district judge held that he would impose sentence treating the charge as a misdemeanor under Section 510(c), even though, in his words, it was not "technically" the offense alleged in the indictment. He directed that the judgment recite that Edmonson was being sentenced under 18 U.S.C. Sec. 510(c), and Edmonson was sentenced under the misdemeanor provisions of that statute.
 
 
 7
 Edmonson's case had been decided when Knoeb appeared at her Rule 11 hearing to change her plea to guilty. Her indictment, like Edmonson's, charged violation of Section 495. As in Edmonson's case, the district judge made it clear that he considered Section 510(c) to be the only statute which now applied to the acts charged in the indictment, i.e. the forgery of Treasury check endorsements of a value of $500 or less. At the Rule 11 inquiry, to determine if Knoeb's guilty plea was voluntary and intelligently made, the district judge advised her that the maximum penalty was the misdemeanor punishment prescribed by Section 510(c). Knoeb's guilty plea was made with that understanding. Without any dismissal of the Section 495 indictment, she thereafter entered a plea of guilty to a violation of Section 510(c) and was sentenced under its misdemeanor provisions.
 
 
 8
 The cases presented by Huerta and Jimicum were in all essential respects the same as those of Knoeb. In addition, however, Huerta and Jimicum also pleaded guilty to bail jumping on the understanding that the forgery charge was controlled by Section 510(c). The severity of the penalties for their bail jumping sentences was, of course, dependent on the gravity of the underlying forgery charges. 18 U.S.C. Sec. 3146. Those bail jumping convictions are also before us on these appeals.
 
 
 9
 The district judge filed a memorandum opinion in Edmonson holding that Section 510 impliedly repealed Section 495 and that it operated retroactively to apply to Edmonson's offense. In the alternative, he held that there was ambiguity presented by the existence of both statutes, which permitted him to resort to interpretation in favor of the most recently enacted statute and in favor of lenity, i.e. in favor of Section 510 prevailing over Section 495. A memorandum opinion filed in Jimicum was very largely duplicative of that filed in Edmonson.
 
 
 10
 In summary, the appellees' indictments dealt with acts committed prior to the enactment of Section 510, the indictments charged violations of Section 495, and the government persistently objected to any disposition of the cases except under the terms of Section 495. Despite this, the district judges formally convicted the appellees of violations of Section 510(c) and sentenced them under its more lenient misdemeanor provisions.
 
 
 11
 The government appeals the judgments of the district court. In doing so, the parties occupy unusual roles--the government is seeking to set aside judgments of conviction and the defendants below are seeking to affirm them. Because of uncertainty as to our jurisdiction to hear its appeals, the government also petitions this court for writs of mandamus directing the district court to vacate the Section 510 judgments and sentences as void, and to resentence under Section 495.
 
 APPELLATE JURISDICTION
 
 12
 The government may appeal in criminal cases pursuant to the terms of 18 U.S.C. Sec. 3731. That statute lists various categories of judgments and orders that are appealable. Appellees contend that this court is without jurisdiction as the government has not demonstrated that it has a right to appeal. Although the judgments appealed from do not fall within Section 3731's listings of orders that are appealable by the government, that listing is not exclusive. The government may appeal under the authority of Section 3731, except when doing so would be prohibited by the Constitution. United States v. DiFrancesco, 449 U.S. 117, 131, 101 S.Ct. 426, 434, 66 L.Ed.2d 328 (1980); United States v. Wilson, 420 U.S. 332, 337, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975); United States v. Hetrick, 627 F.2d 1007, 1010 (9th Cir.1980). Here the government's position is that appellees' convictions and sentences under Section 510 are void and must be vacated to permit entry of new judgments of conviction and new sentences under Section 495. Appellees claim that such a position, if it is sustained on the appeals, would violate their rights under the Double Jeopardy Clause, thus defeating our jurisdiction to hear the appeals.
 
 
 13
 The government argues that if we were to proceed to the merits of its appeals, it would contend that under the Separation of Powers Doctrine the Attorney General had the exclusive right to elect to indict the appellees under Section 495 and the district judges had no power to convict and sentence them for a different crime. The government would contend that the judgments sought to be appealed, and the sentences imposed under them, are void. It would ask us to vacate those judgments and sentences. According to the government's argument, there has never been a lawful disposition of the indictments charging violation of Section 495 and, on remand, the prosecutions would then proceed under the felony provisions of that statute. The government contends that no double jeopardy would occur so long as appellees were given credit for time served under the void convictions.
 
 
 14
 We cannot fault the government's reasoning on the double jeopardy issue. If the district judges had no power to convict and sentence the appellees except under the terms of the Section 495 indictments, then the judgments now before us on these appeals are void and must be reversed on that ground. The government could then be free to proceed on the outstanding Section 495 indictments. There is no double jeopardy prohibition against correcting an illegal sentence even if such correction increases the punishment. Bozza v. United States, 330 U.S. 160, 166-67, 67 S.Ct. 645, 648-49, 91 L.Ed. 818 (1947); United States v. Carter, 704 F.2d 1063, 1064 (9th Cir.1983); United States v. Connolly, 618 F.2d 553, 556 (9th Cir.1980); United States v. Stevens, 548 F.2d 1360, 1362 (9th Cir.), cert. denied, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977); United States v. Kenyon, 519 F.2d 1229, 1233 (9th Cir.), cert. denied, 423 U.S. 935, 96 S.Ct. 293, 46 L.Ed.2d 267 (1975) (vindictiveness would violate due process).[4]
 
 
 15
 The rule permitting correction of void sentences applies even when the defendant has begun to serve the original sentence. Bozza, 330 U.S. at 166-67, 67 S.Ct. at 648-49; Stevens, 548 F.2d at 1362; United States v. Alverson, 666 F.2d 341, 347-48 (9th Cir.1982); United States v. Munoz-De la Rosa, 495 F.2d 253 at 255 (9th Cir.1974). In the present cases appellees have already served all or part of their void sentences. If they were to be resentenced under Section 495, due process would require that they be given credit for punishment already exacted. North Carolina v. Pearce, 395 U.S. 711, 716-18, 89 S.Ct. 2072, 2075-77, 23 L.Ed.2d 656 (1969).
 
 
 16
 We conclude that the appeals of the government do not implicate the appellees' rights under Double Jeopardy Clause and the appeals are therefore authorized under 18 U.S.C. Sec. 3731. Because of our conclusion, we deny the petitions for mandamus as the government has an appellate remedy. United States v. United States District Court, 601 F.2d 379, 380 (9th Cir.1978). We pass then to a consideration of the issues on the merits.
 
 SEPARATION OF POWERS
 
 17
 We review de novo the government's contentions that the judgments and sentences appealed from are illegal and must be vacated. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 18
 It cannot be disputed that under our system of separation of powers, the decision whether to prosecute, and the decision as to the charge to be filed, rests in the discretion of the Attorney General or his delegates, the United States Attorneys. The Executive Branch has "exclusive and absolute discretion to decide whether to prosecute." See United States v. Nixon, 418 U.S. 683, 693-94, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974), citing Confiscation Cases, 7 Wall. 454, 19 L.Ed. 196 (1869). The discretion to prosecute carries with it the discretion to choose the statute that will be charged. United States v. Batchelder, 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). The district court has no power to deny the United States Attorney his prerogative under the Separation of Powers doctrine.
 
 
 19
 When, as here, conduct violates more than one criminal statute the government may generally elect which statute it wishes to charge. United States v. Batchelder, 442 U.S. 114, 123-25, 99 S.Ct. 2198, 2203-2205, 60 L.Ed.2d 755 (1979); United States v. Ruster, 712 F.2d 409, 411 (9th Cir.1983); United States v. Mackie, 681 F.2d 1121, 1122-23 (9th Cir.1982). This is so even though one statute imposes felony penalties and the other merely imposes misdemeanor penalties. United States v. Schaffner, 715 F.2d 1099, 1102 (6th Cir.1983); United States v. Fern, 696 F.2d 1269, 1273-74 (11th Cir.1983). We reject as unsupported appellees' argument that this rule applies only when one statute requires proof of an element that is not required by the other statute. The cases simply do not sustain this argument. However, two important qualifications to the rule are recognized. First, there must be no showing that the government discriminates against any class of defendants in electing which statute it will charge. Batchelder, 442 U.S. at 123-24, 99 S.Ct. at 2203-2204; Mackie, 681 F.2d at 1122-23. No discrimination is alleged here. Second, Congress must not have intended that the more specific statute repeal the more general statute. Ruster, 712 F.2d at 411. Because appellees argue that the enactment of Section 510 evidenced Congressional intent to implicitly repeal inconsistent provisions of Section 495, we now consider that issue.
 
 IMPLIED REPEAL
 
 20
 The district judges concluded that Section 510(c) impliedly repealed Section 495, at least insofar as it applies to the forgery of the endorsements of Treasury checks having a face value of $500 or less. They held that the enactment of Section 510(c) created an uncertainty as to which statute was applicable and that they were entitled to resolve that uncertainty in favor of lenity and in favor of the most recently enacted statute. They expressed belief that the Congress could not have intended to have both statutes in effect, providing different penalties, yet covering precisely the same misconduct.
 
 
 21
 A finding of implied repeal by Section 510 of Section 495 requires that we first find an irreconcilable conflict between the two statutes. Watt v. Alaska, 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981); Chevron U.S.A., Inc. v. Hammond, 726 F.2d 483, 490 n. 8 (9th Cir.1984). We find no such conflict here. The fact that there are two criminal statutes applying to exactly the same criminal conduct, and one provides a different penalty from the other, does not create "irreconcilable conflict" to support a claim of implied repeal. See Radzanower v. Touche Ross & Co., 426 U.S. 148, 155, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) ("It is not enough to show that the two statutes produce differing results when applied to the same factual situation, for that no more than states the problem"). Cf. Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) and United States v. Gann, 732 F.2d 714 (9th Cir.1984) (inconsistent partially overlapping statutes). It merely brings into play the rule that the government has the election of which statute it will charge.
 
 
 22
 Nothing in the legislative history of Section 510 indicates that it was intended to prevail over Section 495--in whole or in part. Indeed, in United States v. Fields, 783 F.2d 1382, 1384 (9th Cir.1986), we noted that a purpose in enacting Section 510 was to "close a loophole" because Section 495 had been held inapplicable to stolen Treasury checks that were not falsely endorsed. We quoted from S.Rep. No. 225, 98th Cong., 1st Sess. 371-72 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3512-13:
 
 
 23
 [I]t is currently possible for a thief to steal a Treasury check endorsed by a payee, endorse his own name and obtain the proceeds, and not violate section 495. In addition, it is possible for a thief to steal one or more government checks or bonds from the rightful owner and sell them to a middle man and not violate section 495 .... Section 511 [renumbered section 510(b)] would .... penalize whoever buys, sells, exchanges, receives, delivers, retains, or conceals a stolen United States security or one that bears a forged endorsement or signature knowing that the security is stolen or bears such an endorsement.
 
 
 24
 This statement in a legislative committee report that accompanied the enactment of Section 510 is inconsistent with a Congressional purpose to repeal Section 495 insofar as it applied to forged endorsements of treasury checks. We hold that no implied repeal was intended.[5]
 
 RULE OF LENITY
 
 25
 It is accepted that where there is ambiguity in a criminal statute requiring judicial interpretation, a court should resolve the ambiguity in favor of lenity. We find no basis for statutory interpretation of Sections 495 and 510. Absent ambiguity in them, either in their internal text, or between them as they are read together, there is no occasion for such statutory interpretation. Batchelder, 442 U.S. at 121-22, 99 S.Ct. at 2202-2203. There is no ambiguity here. The plain language of the two statutes is thus not subject to "interpretation" either in favor of the most recently enacted statute, or in favor of the more lenient statute.
 
 CONCLUSION
 
 26
 The indictment defines the criminal statute under which the defendant is prosecuted. Thus, a district court in accepting a guilty plea to the indictment, may not, without the government's consent, accept a plea to a lesser included offense. United States v. Gray, 448 F.2d 164, 168 (9th Cir.1971). Here, the district judges went beyond accepting a plea to a lesser included offense; in effect they usurped the government's right to frame the indictment by taking it upon themselves to change the indictment to charge another crime. This they had no power to do. Accordingly, their judgments were void.
 
 
 27
 We are thus left with void forgery convictions and sentences imposed under Section 510 and with outstanding indictments charging the appellees with violation of Section 495. We reverse the forgery convictions. We also reverse Knoeb's and Jimicum's bail jumping convictions; resentencing for those crimes must await disposition of the forgery charges under Section 495.[6]
 
 
 28
 On remand, appellees Knoeb, Huerta and Jimicum shall have the opportunity to vacate their guilty pleas, if they are disposed to do so. They pleaded guilty on the incorrect advice of the district judges that the maximum sentence would be that provided by Section 510(c). The government acknowledges that they should not be bound to their former guilty pleas and we agree. Rule 11, Fed.R.Crim.P.; see United States v. Timmreck, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); United States v. Harris, 534 F.2d 141, 142 (9th Cir.1976).
 
 
 29
 Although Edmonson pleaded guilty to violation of Section 495, and was advised of the maximum penalties under that statute, the succeeding events surrounding his sentencing require that he also shall be allowed to withdraw his guilty plea, if he is disposed to do so.
 
 
 30
 We have decided the cases before us, applying established precedents and attempting to give effect to the will of Congress. In doing so, we have resolved a troublesome sentencing issue in one of our district courts and have provided guidance to other courts in our Circuit. The resolution of these cases, however, does not put an end to the issue elsewhere. Congress has enacted two statutes, one a misdemeanor and the other a felony, dealing with the same criminal misconduct. So long as the two statutes coexist, prosecutors will most probably seek indictments under the felony section but seek to negotiate guilty pleas under the misdemeanor section. Perhaps this is what Congress intended. If it did not intend such a consequence, however, the courts are ill-equipped to correct the Congressional oversight. This, then, is another instance where Congress should review its enactments to correct the uncertainty that it has created.
 
 
 31
 The petitions for mandamus are denied. The convictions of forgery and of bail jumping are reversed and the cases are remanded for further proceedings consistent with this opinion.
 
 
 32
 CANBY, Circuit Judge, concurring in part and dissenting in part:
 
 
 33
 Judge Wiggins has written an exceptionally persuasive opinion. I agree entirely with its treatment of the issues of appellate jurisdiction and separation of powers. My only disagreement is over the question whether the enactment of Section 510 effected a partial repeal of Section 495. I believe that it did.
 
 
 34
 Admittedly, repeals by implication are not favored. Watt v. Alaska, 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). It is an overstatement, however, to say that there must be an irreconcilable conflict between statutes before we can find an implied repeal. The two cases cited by the majority for that proposition, Watt v. Alaska, supra, and Chevron, U.S.A., Inc. v. Hammond, 726 F.2d 483, 490 n. 8 (9th Cir.1984), simply deal with the question of which of two statutes controls, the general or the specific, when the two are in irreconcilable conflict.
 
 
 35
 In determining whether an implied repeal has occurred, we are simply trying to ascertain congressional intent. I agree with Judge Wiggins that the legislative history of Section 510 does not compel a finding of partial implied repeal. But the sense of the enactment does. Congress was aware of the existence of Section 495, which had been in effect since 1823. It was also aware that Section 495 had been applied to the forgery of a Treasury check, see United States v. Prussian, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931). As the majority opinion points out, Congress in enacting Section 510 intended to close loopholes in Section 495 that precluded prosecution of one who stole a Treasury check that was already endorsed, or who stole an unendorsed check and sold it to a middle man. S.Rep. No. 225, 98th Cong., 1st Sess. 371-72 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3512-13.
 
 
 36
 Congress in passing Section 510 did not, however, merely close the loopholes in Section 495. Instead, it enacted a statute that covered every possible misdeed that a person could commit in connection with a Treasury check, including forgery that had previously, with some straining, been brought within the reach of the more general Section 495. To me it is far more likely that Congress intended Section 510 to occupy the entire field of crimes dealing with Treasury Checks, than that Congress intended simply to add a plea-bargaining chip to the prosecutor's resources. Nor can I see any reason why Congress would wish to treat forgers of Treasury checks any differently from those who commit fraud with Treasury Checks by any of Section 510's other enumerated methods. I believe that, in specifying a misdemeanor penalty for theft or forgery of Treasury checks not exceeding $500 in face value, Congress intended that the penalty for such a crime not exceed those limits. To the extent that Section 495 authorized a greater penalty, it was repealed by implication.
 
 
 37
 My conclusion that Section 510 effected an implied partial repeal of Section 495 would normally lead me into a number of other issues before finally determining whether the decisions in these cases must be reversed. Because the majority does not reach these issues, see majority opinion note 5, supra, I think it inappropriate for me to explore them here.
 
 
 
 [1]
 Section 495 states:
 Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order certificate, receipt, contract or other writing .... [s]hall be fined not more than $1,000, or imprisoned not more than ten years, or both.
 
 
 [2]
 Sec. 510. Forging endorsements on Treasury checks or bonds or securities of the United States
 (a) Whoever, with intent to defraud--
 (1) falsely makes or forges any endorsement or signature on a Treasury check or bond or security of the United States; or
 (2) passes, utters, or publishes, or attempts to pass, utter, or publish, any Treasury check or bond or security of the United States bearing a falsely made or forged endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both.
 (b) Whoever, with knowledge that such Treasury check or bond or security of the United States is stolen or bears a falsely made or forged endorsement or signature buys, sells, exchanges, receives, delivers, retains, or conceals any such Treasury check or bond or security of the United States that in fact is stolen or bears a forged or falsely made endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both.
 (c) If the face value of the Treasury check or bond or security of the United States or the aggregate face value, if more than one Treasury check or bond or security of the United States, does not exceed $500, in any of the above-mentioned offenses, the penalty shall be a fine of not more than $1,000 or imprisonment for not more than one year, or both.
 
 
 [3]
 Various alternatives were discussed. The judge was urged to dismiss the indictment for failure to state a charge, to amend the indictment to charge violation of Section 510 rather than Section 495, or to sentence under the misdemeanor provisions of Section 510 on the theory that it was a lesser included offense of Section 495. Any of these courses of action would require a government appeal to test their validity. He was also urged simply to sentence the appellee under the felony provisions of Section 495, leaving it to the appellee to take an appeal. The district judge was wary of adopting any of these alternatives
 
 
 [4]
 There can be no expectation of finality as to sentences that are illegal and are thus always subject to modification under Rule 35(a), Fed.R.Crim.P.; United States v. Crawford, 769 F.2d 253 (5th Cir.1985), cert. denied sub nom. Waggoner v. United States, --- U.S. ----, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986)
 
 
 [5]
 Finding as we do that there was no repeal of Section 495, specific or implied, we need not reach other issues which might be relevant if there were such a repeal. First, we do not address the issue of the power of a district judge, over the government's objection, to convict and sentence under another statute, once he finds that the statute charged in the indictment has been repealed. Second, because the appellees were indicted under, and should have been sentenced under, Section 495, we have no basis for pursuing their contention that Section 510 was appropriately applied retroactively. And it follows that we have no occasion to explore the government's rejoinder that 1 U.S.C. Sec. 109 would, in any event, save pending prosecutions. Finally, we reject appellees' argument that the adoption of Section 510 should cause us to reassess the applicability of Section 495 to Treasury check forgery, i.e., that we should somehow overrule Prussian. We, of course, have no power to do so
 
 
 [6]
 As discussed above, due process would require that appellees be given credit for any punishment already exacted pursuant to the bail jumping sentences