UNITED STATES of America, Plaintiff-Appellee,

v.

Raul ARRELLANO–RIOS, Defendant-Appellant.

No. 85–5199.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1986.

Decided Sept. 9, 1986.

David Katz, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Joseph P. Walsh, Los Angeles, Cal., for defendant-appellant.

Before GOODWIN, TANG, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Raul Arrellano-Rios appeals his conviction on two counts of aiding and abetting drug crimes, 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2(a) (1982), and one count of using a firearm in connection with a crime of violence, 18 U.S.C. § 924(c) (1982). He claims that his post-arrest statements should have been suppressed because there was no probable cause supporting the arrest. He also claims that the conviction on the firearm count should be reversed because the drug crimes were not "crimes of violence" within the meaning of section 924(c). The government concedes that reversal of the firearm count is proper, but argues that, if the other convictions are affirmed, the case should be remanded to give the trial judge an opportunity to increase the appellant's sentence. We affirm the convictions on the aiding and abetting counts and vacate the conviction on the firearm count. Because Arrellano has already completed his sentences on the affirmed convictions, we do not remand for resentencing.

## BACKGROUND

In late 1984, appellant's co-defendant, Jesus Sanchez-Contreras, met with DEA agent Hector Berrellez three times and offered to sell him heroin. On all three of these occasions, Sanchez was accompanied by another man (not the appellant). Several months later, Sanchez called Berrellez to offer to sell him five ounces ($35,000 worth) of heroin. They arranged a meeting for that evening at a McDonald's restaurant. Berrellez and another DEA agent met Sanchez at the McDonald's. Sanchez invited them to go to his car across the street to see the heroin. While Sanchez walked to his car, the agents went to their car and drove it over to Sanchez's. A third DEA agent, who was outside observing, saw Arrellano get out of Sanchez's car and walk toward a nearby parking lot. Sanchez suggested going to that parking lot to consummate the deal.

The agents and Sanchez drove their cars into the parking lot and parked alongside one another. Sanchez waited for Arrellano to come within 10–15 feet of them and then began the transaction. Sanchez opened the trunk, removed a package containing heroin, and handed it to Berrellez. Arrellano watched the transaction intently.

On a signal from one of the agents, Sanchez was arrested. Arrellano backed away and was apparently trying to leave. The agents arrested him, patted him down and found a loaded .38 caliber revolver in his right front pocket. After being advised of his *Miranda* rights, Arrellano admitted that he had come with Sanchez, that he knew drugs were being delivered, and that Sanchez had told him to bring the gun.

At the time of the arrest, Berrellez had twelve years training and experience in narcotics cases. He testified that it was very likely that Sanchez would have a bodyguard with him. The transaction involved a quantity of heroin worth a substantial sum; at most heroin transactions bodyguards or weapons are present; and at their previous meetings Sanchez had been accompanied by another person, presumed to be a bodyguard. Berrellez stated that appellant's actions on the night of the arrest were consistent with his being Sanchez's bodyguard.

Appellant was indicted on three counts. The first two counts charged him with aiding and abetting both possession of heroin with intent to distribute and distribution of heroin. The third count alleged knowing use of a firearm in connection with a crime of violence (possession of heroin with intent to distribute). Arrellano entered a plea of not guilty to all three counts and filed motions to suppress his post-arrest statements and to dismiss the third count. The motions were denied. The jury found Arrellano guilty on all counts. He was sentenced to concurrent one-year sentences on the first two counts, and a consecutive five-year sentence on count three. He timely appeals.

## DISCUSSION

### I. Probable Cause

Arrellano alleges that there was no probable cause supporting his arrest. This court reviews a district court's finding of probable cause *de novo*. *United States v. Howard*, 758 F.2d 1318, 1319 (9th Cir.1985) (per curiam).

Arrellano relies on cases that hold that mere proximity to criminals or criminal activity is an insufficient basis for a finding of probable cause. *See, e.g., Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *United States v. Vaughan*, 718 F.2d 332 (9th Cir.1983). In *Ybarra*, the Supreme Court said, "a person's mere propinquity to others independently suspected of criminal activity does not, *without more*, give rise to probable cause to search that person." 444 U.S. at 91, 100 S.Ct. at 342 (emphasis added).

The government, relying on *United States v. Howard*, 758 F.2d 1318, asserts that "more" in this case is provided by the agent's knowledge that Sanchez was likely to have a bodyguard, and by the actions of Sanchez and Arrellano that suggested that Arrellano was the bodyguard. We agree. In *Howard*, a postal inspector recognized the conduct of defendant and his accomplices as consistent with a known pattern of criminal activity.[1] The court found probable cause based on the defendant's contacts with suspected criminals and his actions that fit the recognized pattern. 758 F.2d at 1320.

In this case, as in *Howard*, the agent's experience allowed him to recognize a pattern of criminal activity. Arrellano was not arrested because of his proximi-

---

1. In *Howard*, the postal inspector received a tip that a female customer was trying to cash an altered money order. When he arrived at the post office, he observed defendant Howard move his car from one parking space to another nearer the entrance. Another man approached Howard, spoke with him, and motioned toward the post office. The man entered the post office, and Howard remained in the car, with the engine running. Inside, the man checked out the room for a while, then approached the woman attempting to cash the money order at the counter and whispered to her. The postal inspector, knowing that a common procedure for cashing altered money orders was to have a woman go to the window while others wait outside, decided to arrest Howard. As he approached Howard's car, Howard shifted gears to leave, and then was arrested. *See* 758 F.2d at 1319.

ty to a suspected criminal, but because his behavior and that of Sanchez suggested that he was playing a specific role within that pattern: Sanchez's bodyguard. The experience of a trained law enforcement agent is entitled to consideration in determining whether there was probable cause. *See Howard,* 758 F.2d at 1320. Based on Agent Berrellez's experience with the use of bodyguards in connection with heroin transactions, we find he had probable cause to believe that Arrellano was aiding and abetting the sale of heroin at the time of the arrest. Because there was probable cause for the arrest, the district court properly refused to suppress Arrellano's post-arrest statements. We affirm his convictions on the aiding and abetting counts.

## II. Remanding for Resentencing

■ 18 U.S.C. § 924(c) prohibits use of a firearm in connection with a crime of violence. Arrellano contends that narcotics offenses are not "crimes of violence" within the meaning of the statute. *See United States v. Diaz,* 778 F.2d 86, 88 (2d Cir.1985) (per curiam). The government concedes this point on appeal. We therefore vacate Arrellano's conviction on the firearms count.

The government contends, however, that we should remand to the district court to give it an opportunity to increase the sentences on the first two counts. *See Diaz,* 778 F.2d at 88–89. The parties agree that Arrellano has fully served his existing one-year sentences on those counts. Because increasing a legal sentence that already has been fully served would violate the Double Jeopardy Clause, we decline to remand.

■ In *United States v. Edick,* 603 F.2d 772 (9th Cir.1979), we vacated the defendant's sentence on one of two counts because the district court had improperly imposed consecutive rather than concurrent sentences. *Id.* at 775, 778. We held that because the defendant had fully served his sentence on one count, it would violate the Double Jeopardy Clause to resentence him to a greater term on the second count. *Id.*

at 777–78. If resentencing is improper when a defendant has completed his sentence on one count and the other *sentence* is vacated, *a fortiori,* it is improper when the other *conviction* is vacated.

The government contends that *Edick* has been overruled by *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). *See United States v. Hagler,* 709 F.2d 578, 579 (9th Cir.1983) (questioning continuing validity of *Edick* in light of *DiFrancesco*). We disagree. *DiFrancesco* held that the constitutional finality and conclusiveness that attach to a jury's verdict of acquittal do not attach to a criminal sentence at the time it is pronounced. 449 U.S. at 132, 101 S.Ct. at 434. The Court also held that jeopardy does not attach at the time a defendant begins serving his sentence where the defendant has no reasonable expectation of finality in the original sentence. *Id.* at 139, 101 S.Ct. at 438. The defendant in *DiFrancesco* had no expectation of finality because Congress had specifically provided that his sentence was subject to appeal by either the defendant or the government. *Id.* *See* 18 U.S.C. § 3576 (1982). *DiFrancesco* also explicitly disapproved the readings of two earlier Supreme Court cases, *Ex Parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), and *United States v. Benz,* 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931), relied on in *Edick.* 449 U.S. at 138–39, 101 S.Ct. at 438–39. *See Edick,* 603 F.2d at 777–78.

*DiFrancesco,* however, did not address the application of double jeopardy principles to a defendant whose sentence has been fully served. We believe that although *DiFrancesco* disapproved some of the reasoning we used in *Edick,* it did not disapprove the result. In *DiFrancesco,* the Court makes clear that the initial imposition of sentence is not accorded the same inviolable finality as an acquittal, and, therefore, that a defendant, at that time, has no expectation of finality. 449 U.S. at 136–38, 101 S.Ct. at 437–38. Since *DiFrancesco,* courts have focused on the reasonableness of the expectation of finality in a sentence when applying double jeopardy

principles to sentence enhancements. *See, e.g., United States v. Crawford,* 769 F.2d 253, 257 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986). The recent cases have generally found that a defendant has no reasonable expectation of finality at the time he begins to serve his sentence. *See United States v. Lundien,* 769 F.2d 981, 985 (4th Cir. 1985) (double jeopardy not violated by sentence enhancement where defendant hadn't "fully served" his sentence), *cert. denied,* — U.S. —, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986); *United States v. Bello,* 767 F.2d 1065, 1070 (4th Cir.1985) (double jeopardy doesn't protect against greater sentence after appeal even if sentence begun); *Crawford,* 769 F.2d at 257–58 (no expectation of finality in illegal sentence; can alter even after sentence begun); *United States v. Jefferson,* 714 F.2d 689, 706–707 (7th Cir.1983) (same), *overruled on other grounds, United States v. Markowski,* 772 F.2d 358 (1985), *cert. denied,* — U.S. —, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986); *but see United States v. Jones,* 722 F.2d 632, 638–39 (11th Cir.1983) (unless statutory sentence modification available or defendant deceives sentencing judge, defendant has expectation of finality and jeopardy attaches when he begins serving sentence).

We recently addressed a situation in which the government requested correction of a fully served sentence. *United States v. Edmonson,* 792 F.2d 1492 (9th Cir.1986). Several defendants were charged under separate indictments with violation of 18 U.S.C. § 495, a felony. The facts of the cases are unusual in that two district court judges, each handling some of the cases, both refused to convict or sentence the defendants under the statute charged in the indictments. They convicted and sentenced the defendants under a subsequently passed statute, 18 U.S.C. § 510(c), that made the conduct in question a misdemeanor instead of a felony. One of the judges acknowledged that he was sentencing for an offense that was not "technically" the

offense alleged in the indictment. The government understandably appealed, asserting that determining what crimes are charged is the prerogative of the prosecutor, not the court.

We held that the judgments were void because the district judges had taken it "upon themselves to change the indictment to charge another crime." 792 F.2d at 1499. We rejected the defendants' claim that, because they had served part or all of their sentences, the Double Jeopardy Clause prohibited the government's appeal. *Id.* at 1496–97. There can be no expectation of finality in sentences that are illegal and that were under challenge by the government from the moment the district court judges suggested the sentences they proposed to impose. *See id.* at 1496 & n. 4.

The *Edmonson* reasoning does not apply to the present case. No one has challenged the legality of Arrellano's sentence on the aiding and abetting convictions. He never has had any reason to question that his sentences on those counts would be fully served by incarceration for one year. The *Edmonson* defendants, however, knew even before sentencing that there was a possibility that the sentences to be imposed were illegal.

■ The Double Jeopardy Clause protects against multiple punishments for the same offense. *DiFrancesco,* 449 U.S. at 129, 101 S.Ct. at 433 (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). We need not decide at what point, in the service of a defendant's legal sentence, a reasonable expectation of finality arises. We are certain, however, that the expectation has arisen, and jeopardy has attached, upon its completion. *See Lundien,* 769 F.2d at 985 (implying that jeopardy attaches when sentence "fully served"). This conclusion is supported by the fact that we find no cases holding that finality is not accorded to a fully served legal sentence.[2] Accord-

---

**2.** The government asserts that *United States v. Covelli,* 738 F.2d 847 (7th Cir.), *cert. denied,* 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984)

can be read to hold that sentence enhancement after completion of a legal sentence does not violate the Double Jeopardy Clause. *Covelli*

ingly, we reaffirm the rule that increasing a legal sentence after it has been fully served violates the Double Jeopardy Clause.[3] *Cf. United States v. Woodward,* 726 F.2d 1320, 1328 (9th Cir.1983) (post-*DiFrancesco* case reaffirming *Edick* without discussing *DiFrancesco), rev'd on other grounds,* 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985).

AFFIRMED in part, VACATED in part.

does not state whether the sentences in that case had been fully served and the court nowhere discusses the possible ramification of completion of a sentence.

**3.** We note that courts have stated that enhancement of a sentence after the defendant's expectations in its length have "crystalized" might be a denial of due process. *See Lundien,* 769 F.2d at 985; *Breest v. Helgemoe,* 579 F.2d 95, 101 (1st Cir.), *cert. denied,* 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1971). Because we find that enhancing Arrellano's sentence would violate the Double Jeopardy Clause, we need not address the due process issue.