UNITED STATES of America, Appellee,

v.

**LaDonna Kay OLIVER, Appellant.**

**No. 89–2646.**

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1990.

Decided July 3, 1990.

---

Sam Sexton, III, Fort Smith, Ark., for appellant.

Claude S. Hawkins, Fort Smith, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

A jury found LaDonna Kay Oliver guilty of aiding and abetting the forgery and uttering of a United States Treasury check, in violation of 18 U.S.C. §§ 2, 495 (1988). We affirm the defendant's conviction but vacate her sentence and remand for new sentencing.

## I.

Frank L. Givens Sr., a nursing home resident in Fort Smith, Arkansas, always had his monthly Social Security checks sent to his foster daughter, Bessie Travis. When Mrs. Travis received a check, she would go to the nursing home and pay Mr.

Givens's rent. In June of 1988, no check for Mr. Givens arrived at Mrs. Travis's home. Early in the same month, Frank Dokes and LaDonna Oliver entered the City National Bank in Rogers, Arkansas. After presenting identification Ms. Oliver cashed some money orders. Mr. Dokes said he needed a check cashed also, but added that he had no identification because his wallet had been stolen. The bank teller, Mary Copher, responded that she would cash his check only if Ms. Oliver endorsed it as well. The defendant then signed her name after the signature that Mr. Dokes had written on the back of the check. He had endorsed the check with the name "Frank Givens Sr."; the check was a United States Treasury check dated June 3, 1988, payable to "Frank L. Givens Sr." for $320.00.

Mr. Dokes pleaded guilty to charges of taking Mr. Givens's check from Mrs. Travis's mailbox, in violation of 18 U.S.C. § 1702 (1988); and forging, uttering and publishing the check with the intent to defraud the United States, in violation of 18 U.S.C. § 495. Ms. Oliver maintained her innocence, however, contending that although she knew Mr. Dokes's first name to be Frank, she did not know his last name. The defendant claimed that when she endorsed the check under the signature of "Frank Givens Sr.," she assumed that "Givens" was Mr. Dokes's last name.

## II.

On appeal Ms. Oliver argues that the district court erred in denying her motion to compel the government to produce Mary Copher's address so that defense counsel could interview her before the trial. According to the defendant, Ms. Copher was no longer a City National Bank employee when the indictment was returned, and her name was not listed in local telephone directories. Bank personnel said that Ms. Copher might reside in Mountainburg, Arkansas, but defense counsel was unable to locate her there. Ms. Oliver contends that she had a right under the fifth and sixth amendments to obtain Ms. Copher's address from the government.

■ In certain circumstances prosecutors must disclose to defendants information in their possession. See, e.g., United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). However, a defendant's constitutional right to information held by the prosecutor—more specifically, a defendant's right of pre-trial access to a potential witness—is not unlimited. See, e.g., United States v. Bailey, 834 F.2d 218, 223 (1st Cir.1987) (noting that defendant does not have constitutional right to gain access to every witness he desires). Two general questions should be considered in determining whether such a right exists. First, has the defendant shown reasonable diligence in attempting to obtain the requested information without the government's assistance? See, e.g., Lugo v. Munoz, 682 F.2d 7, 10 (1st Cir.1982) (Gibson, J.). Second, has the defendant demonstrated that the requested information would have led to the admission of otherwise undiscoverable evidence that is "both material and favorable to the defense"? See, e.g., United States v. Valenzuela–Bernal, 458 U.S. 858, 873, 102 S.Ct. 3440, 3449–50, 73 L.Ed.2d 1193 (1982); Bailey, 834 F.2d at 223.

■ The first inquiry requires consideration of whether the information sought here, Ms. Copher's address, was "exclusively within the prosecutor's control and knowledge." Lugo, 682 F.2d at 9. In some cases—for example, those involving an informant hidden by the government, see, e.g., Freeman v. Georgia, 599 F.2d 65 (5th Cir.1979), cert. denied, 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980)—the location of the missing witness is obviously within the prosecutor's exclusive control and knowledge. Here, however, nothing indicates that Ms. Copher was in hiding, nor is there any evidence of the government otherwise limiting her contact with the defendant, see, e.g., Gregory v. United States, 369 F.2d 185, 187 (D.C.Cir.1966) (prosecutor told witnesses not to talk with defense counsel unless prosecutor is present). And unlike cases such as United

*States v. Opager,* 589 F.2d 799 (5th Cir. 1979), which involved a confidential government witness, defense counsel here knew the missing witness's name and had other clues regarding her location. The apparent absence of any government interference with the defendant's access to Ms. Copher and the "leads" that the defense had to find Ms. Copher suggest that the defendant may not have made an adequate effort to locate her.

Even if Ms. Oliver's counsel exercised reasonable diligence in searching for Ms. Copher, we do not believe that the defense has shown that Ms. Copher's testimony would have been any more "material and favorable" had a pre-trial meeting occurred. Defense counsel had an adequate opportunity to cross examine Ms. Copher at trial, and the defendant has not suggested any additional information—much less any more facts in the defendant's favor—that could have been obtained had a pre-trial interview occurred.

We conclude, therefore, that the district court did not act improperly in refusing to compel production of Ms. Copher's address.[1]

### III.

Police Detective Bill Champion testified that he had known Ms. Oliver for several years and had seen her and Mr. Dokes together on more than one occasion, including a time when Detective Champion had arrested Mr. Dokes on May 20, 1988, for a convenience store robbery. According to the detective, Mr. Dokes and Ms. Oliver were in her automobile when Mr. Dokes was arrested. Over the defendant's objec-

tion, the detective stated that he had no doubt in his mind that she knew Mr. Dokes's last name at the time of this arrest.

■ Ms. Oliver argues that reversal is warranted because Detective Champion's testimony regarding her knowledge of Mr. Doke's last name was inadmissible under Rules 602 and 701 of the Federal Rules of Evidence.[2] We will not reverse the district court's admission of testimony under either of these rules unless the court clearly abused its broad discretion. *See, e.g., United States v. Champion,* 813 F.2d 1154, 1172 (11th Cir.1987) (Rule 602); *Hogan v. American Tel. & Tel. Co.,* 812 F.2d 409, 411 (8th Cir.1987) (Rule 701).

Rule 602 prohibits the admission of "testimony concerning matters the witness did not observe or had no opportunity to observe." *United States v. Lyon,* 567 F.2d 777, 783–84 (8th Cir.1977), *cert. denied,* 435 U.S. 918, 98 S.Ct. 1476, 55 L.Ed.2d 510 (1978). Rule 701, which deals with lay witness opinion testimony, permits such testimony if it is based on "relevant historical or narrative facts that the witness has perceived," *Teen–Ed, Inc. v. Kimball Intern., Inc.,* 620 F.2d 399, 403 (3d Cir.1980), and if it "would help the factfinder determine a matter in issue," *Hurst v. United States,* 882 F.2d 306, 312 (8th Cir.1989).

■ Although Detective Champion did not witness any actions by Mr. Dokes or Ms. Oliver that would conclusively demonstrate her knowledge of Mr. Dokes's last name (for example, if Ms. Oliver had addressed Mr. Dokes by his last name), we are inclined to think the district court did not abuse its discretion in allowing the

---

1. Our conclusion that the government had no constitutional duty to disclose Ms. Copher's address is not meant to condone as a matter of policy the prosecutor's refusal to assist the defendant in this matter. The government offered no reason for its failure to disclose Ms. Copher's address other than that as a general rule it does not disclose such information unless required to do so by Rule 16(a) of the Federal Rules of Criminal Procedure. *See generally* Fed.R. Crim.P. 16(a) (specifying information that is subject to disclosure by the government to a criminal defendant).

2. Rule 602 provides, in pertinent part, that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evid. 602. Rule 701 states that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." Fed.R.Evid. 701.

detective to give his opinion that the defendant knew Mr. Dokes's last name. "While the ordinary rule confines the testimony of a lay witness to concrete facts within his knowledge or observation, the [c]ourt may rightly exercise a certain amount of latitude in permitting a witness to state his conclusions based upon common knowledge or experience." *Batsell v. United States,* 217 F.2d 257, 262 (8th Cir.1954). Even if the district court went beyond its discretion in admitting the opinion testimony, the error, if any, was harmless.[3]

## IV.

■ In challenging her sentence of twenty-six months imprisonment, Ms. Oliver argues that she may not be imprisoned for more than one year because 18 U.S.C. § 510(c) (1988) sets a one-year limit on the prison term for offenses involving the forgery and uttering of a United States Treasury check with a face value of $500.00 or less. The defendant was convicted, however, under 18 U.S.C. § 495, which also criminalizes her conduct but does not specify a maximum term of imprisonment. We agree with the holdings of our sister circuits that 18 U.S.C. § 495 was not implicitly repealed by 18 U.S.C. § 510 and that the government may prosecute under either statute. *See United States v. Barrett,* 837 F.2d 933 (10th Cir.1988); *United States v. Cavada,* 821 F.2d 1046 (5th Cir.), *cert. denied,* 484 U.S. 932, 108 S.Ct. 304, 98 L.Ed.2d 262 (1987); *Edwards v. United States,* 814 F.2d 486 (7th Cir.1987); *United States v. Edmonson,* 792 F.2d 1492 (9th Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987).[4] It was therefore permissible for the district court to sentence Ms. Oliver to imprisonment of more than one year under 18 U.S.C. § 495.

## V.

■ Finally the defendant contends that the district court erred in enhancing her sentence pursuant to Guidelines § 4B1.3. At the time of Ms. Oliver's sentencing, § 4B1.3 read as follows:

> If the defendant committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income, his offense level shall be not less than 13, unless § 3E1.1 (Ac-

3. There was substantial evidence besides Detective Champion's testimony to support a finding that Ms. Oliver either knew Mr. Dokes's last name or at least knew that he had forged the signature on the check. Bessie Travis testified that she recalled Mr. Dokes and the defendant having visited her home together. Yketa Travis, Bessie's daughter, testified that she had a conversation with Ms. Oliver prior to June of 1988, during which Yketa told the defendant that she had met a "dude named Frank Dokes from Little Rock" and Ms. Oliver said she knew him. Yketa also testified that the defendant told her that Mr. Dokes gave the defendant $100.00 "to take her out of town." Secret Service Agent William Martin Briscoe testified that the defendant stated that she was approached by an acquaintance named Frank Dokes. Further, another police officer testified that on June 6, 1988, he had answered a complaint involving Mr. Dokes and Ms. Oliver and had been told by the defendant that Mr. Dokes had cut her across the forehead with a knife and that Mr. Dokes had stolen, forged and cashed an old man's Social Security check. Although Ms. Oliver testified that she knew Mr. Dokes only by "Frank" or "Dobie," we conclude that other evidence clearly supported a jury finding that at the time she endorsed the check, Ms. Oliver knew that her companion's last name was "Dokes," or at least that her companion's last name was not "Givens," as he had signed the treasury check.

4. Ms. Oliver also contends that the statute authorizing the creation of the United States Sentencing Commission, 28 U.S.C. § 991(b) (1988), implicitly repeals 18 U.S.C. § 495. She argues that the inconsistent sentencing standards of 18 U.S.C. § 495 and 18 U.S.C. § 510 violate the *requirement of 28 U.S.C. § 991(b)(1)(B) that the* sentencing guidelines "avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." The Sentencing Commission has resolved the inconsistencies between sentencing provisions of 18 U.S.C. § 495 and 18 U.S.C. § 510 should be sentenced under the Guidelines § 2F1.1, which is also applied to violators of 18 U.S.C. § 495. *See* United States Sentencing Comm'n, *Guidelines Manual* § 2B5.2 (Nov.1989) (stating that Guidelines § 2F1.1 should be used for sentencing offenders of 18 U.S.C. § 510). *We defer to the Sentencing Commission's interpretation of its mandate under 28 U.S.C. § 991(b)(1)(B) as applied in the context of resolving the inconsistencies between 18 U.S.C. § 495 and 18 U.S.C. § 510, and accordingly hold that 28 U.S.C. § 991(b)(1)(B) is no bar to sentencing the defendant to more than one year imprisonment pursuant to Guidelines § 2F1.1.*

ceptance of Responsibility) applies, in which event his offense level shall be not less than 11.

United States Sentencing Comm'n, *Guidelines Manual* § 4B1.3 (June 1988).[5] Application of § 4B1.3 resulted in Ms. Oliver's sentencing range being twenty-four to thirty months imprisonment. If § 4B1.3 had not been used, the range would have been six to twelve months.[6]

We review a district court's finding of criminal livelihood under the deferential "clearly erroneous" standard. *See* 18 U.S.C. § 3742(e) (1988). In this case, however, we do not believe that the district court gave an adequate explanation of its decision to apply § 4B1.3 for there to be meaningful appellate review. *See* 18 U.S.C. § 3553(c) (1988).

In determining whether to apply § 4B1.3, a district court should first consider whether the defendant engaged in a "pattern of criminal conduct from which he derived a substantial portion of his income." The commentary to § 4B1.3 defines "pattern of criminal conduct" as "planned criminal acts occurring over a substantial period of time" and adds that "[s]uch acts may involve a single course of conduct or independent offenses." U.S.S.G. § 4B1.3, comment. (n.1). This definition does not address the degree of interrelatedness that the criminal acts must have to form a "pattern of criminal conduct," but we know that "in common parlance two of anything do not generally form a 'pattern,'" *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479,

496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).

The legislative history of 28 U.S.C. § 994(i)(2) (1988), which is the statutory basis for Guidelines § 4B1.3, indicates that Congress derived the language of this statute from the dangerous special offender statute, 18 U.S.C. § 3575(e) (repealed 1984), and the dangerous special drug offender. statute, 21 U.S.C. § 849(e) (repealed 1984). *See* H. Rep. No. 1030, 98th Cong., 2d Sess. 176, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3359. The dangerous special offender statutes defined a pattern of criminal conduct as "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e); 21 U.S.C. § 849(e). Because the terms "pattern of criminal conduct" were adopted from the dangerous special offender statutes, we conclude that the definition given these terms in those statutes should be used in interpreting § 4B1.3 as well. *Cf. United States v. Nolder*, 887 F.2d 140, 142 (8th Cir.1989) (applying dangerous special offender statue definition of "substantial portion" in context of interpreting § 4B1.3).[7]

If the district court finds that the defendant has engaged in a "pattern of criminal conduct from which he derived a substantial portion of his income," it must then determine whether the present offense is "part" of that pattern. In order for the offense to be part of the pattern, it must be

---

5. Guidelines § 4B1.3 was amended subsequent to Ms. Oliver's sentencing to read as follows: If the defendant committed an offense as part of criminal conduct engaged in as a livelihood, his offense level shall be not less than 13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than 11.
United States Sentencing Comm'n, *Guidelines Manual* § 4B1.3 (Nov.1989). In determining Ms. Oliver's proper sentence, we apply the language of Guidelines § 4B1.3 and its commentary that was in effect at the time of her sentencing. *See United States v. Hewitt*, 902 F.2d 1082 (2d Cir.1990).

6. Without the offense level enhancement of § 4B1.3, Ms. Oliver's offense level would have

been six, which when matched with her criminal history category of four, produces a sentencing range of six to twelve months. *See* U.S.S.G. Ch. 5, Pt. A (sentencing table).

7. Precedent for using the dangerous special offender definition of "pattern" in other statutory contexts includes recent Supreme Court decisions that have interpreted the meaning of "pattern" in the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961– 1968 (1988), with reference to the dangerous special offender definition. *See H.J., Inc. v. Northwestern Bell Tel. Co.*, —— U.S. ——, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989); *Sedima*, 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14.

related to the pattern. Again the dangerous special offender language can provide guidance: the present offense is part of the criminal activity pattern if that offense "has the same or similar purposes, results, participants, victims, or methods of commission" as the pattern, or "otherwise [is] ... interrelated [with the pattern] by distinguishing characteristics." 18 U.S.C. § 3575(e); 21 U.S.C. § 849(e).

We do not believe that the district court adequately defined what conduct constituted Ms. Oliver's pattern of prior criminal activity or sufficiently addressed the question whether the defendant's aiding and abetting of Mr. Dokes's forgery and uttering were related to any prior pattern of criminal activity. The evidence indicates that Ms. Oliver has never been employed in a legal occupation and that she has a two to four hundred dollar a day cocaine habit. The record also discloses that the defendant has had numerous arrests and convictions over the last fifteen years on varied charges. However, the bulk of her criminal history relates to prostitution and theft-related offenses, not to forgery. Assuming that Ms. Oliver's prior prostitution and theft-related activities constitute a "pattern of criminal activity from which [s]he derived a substantial portion of [her] income," we do not readily discern any relationship between that pattern and Ms. Oliver's current offense. With the exception of her juvenile arrest in 1975 for forgery and uttering, and her 1983 forgery conviction, none of Ms. Oliver's prior offenses appears to be even remotely related to her present crime.

One could argue that Ms. Oliver's current offenses are part of a pattern of forgery activities that include her 1975 arrest and 1983 conviction. However, the evidence does not seem to indicate that her monetary gain from these three activities, which were separated by several years, constituted "a substantial portion" of her income, as defined in *Nolder*, 887 F.2d at 142.

Moreover, there appears to be no evidence that Ms. Oliver received any of the proceeds from the check. Although proof of pecuniary benefit was not required to convict the defendant of aiding and abetting Mr. Dokes's illegal activities, her apparent lack of economic benefit from the transaction militates against a finding that her offense was part of a pattern of criminal activity engaged in to produce income.

Clearly Ms. Oliver has an unsavory past, but her criminal history alone is not sufficient to warrant enhancement of her offense level pursuant to § 4B1.3. Section 4B1.3 was not intended to punish individuals who are merely frequent offenders; rather, it was designed to punish the defendant whose current crime was part of a larger pattern of illegal pecuniary activities. Even if the defendant has engaged in a life of crime to earn her livelihood, there must be a link between her present offense and her prior activity for § 4B1.3 enhancement to be warranted.

Although we are skeptical of whether Guidelines § 4B1.3 is applicable, we remand to allow the district court to reexamine the evidence in light of this opinion and, should it choose again to apply § 4B1.3, to give a more detailed explanation of its decision.

## VI.

Ms. Oliver raises other points of error, but we find them all to be without merit.

We affirm the defendant's conviction but vacate her sentence and remand for further sentencing proceedings not inconsistent with this opinion.