HARTZELL MANUFACTURING,
INC., Plaintiff,

v.

AMERICAN CHEMICAL TECHNOL-
OGIES, INC., and Olin Corpora-
tion, Defendants.

Civ. No. 3–94–71.

United States District Court,
D. Minnesota,
Third Division.

Aug. 22, 1995.

Geoffrey P. Jarpe and Ruth S. Marcott, St. Paul, MN, for plaintiff.

Jonathan Saffold, Jr., Minneapolis, MN, for defendant American Chemical Technologies, Inc. ("ACT").

Creighton R. Magid, Minneapolis, MN, for defendant Olin Corporation ("Olin").

## ORDER

DAVIS, District Judge.

This matter is before the Court upon Defendants' appeal of Magistrate Judge Erickson's Order of July 18, 1995. Defendants seeks reversal of the portions of Magistrate Judge Erickson's Order granting Plaintiff's motion to compel the non-expert testimony of Peter Skoog.

The Court must modify or set aside any portion of the Magistrate Judge's Order found to be clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 72(a); Local Rule 72.1(b)(2). Based on a review of the record and the submissions of parties, the Court concludes that the Magistrate Judge's Order is neither clearly erroneous nor contrary to law.

Accordingly, **IT IS HEREBY ORDERED THAT:**

Magistrate Judge Erickson's Order dated July 18, 1995 (Clerk Doc. No. 98) is AFFIRMED.

## ORDER

## Filed July 18, 1995

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Plaintiff's Motion for an Order compelling the non-expert testimony of Peter Skoog ("Skoog").

A Hearing on the Motion was conducted on May 18, 1995, at which time the Plaintiff appeared by Geoffrey P. Jarpe and Ruth S. Marcott, Esqs., the Defendant American Chemical Technologies, Inc. ("ACT") appeared by Jonathan Saffold, Jr., Esq., and the Defendant Olin Corporation ("Olin") appeared by Creighton R. Magid, Esq.

For reasons which follow, we grant the Motion.[1]

### II. *Factual and Procedural Background*

The Plaintiff is in the business of manufacturing, die casting, and machining various aluminum and zinc parts. In that process, the Plaintiff operates die casting machines which contain hydraulic systems that utilize water glycol hydraulic fluids ("WGHF"). For some period of time, the Plaintiff purchased these fluids from E.F. Houghton & Co. ("Houghton") but, in December of 1990, the Plaintiff started purchasing WGHF from ACT that had been supplied by Olin. According to the Plaintiff, fundamental to its decision to purchase ACT's WGHF was ACT's assurance that its product was compatible with the Houghton fluid that had been previously used in the Plaintiff's die casting machines.

As its name implies, WGHF is water-based and, as a result, the substance will corrode or cause rust to form on ferrous metals if the pH should drop below 8.0. As a consequence, an amine, known as diethanolamine ("DEA"), was admixed into Olin's WGHF to inhibit the product's corrosive attributes. Olin notes, however, that DEA was listed by the Federal Government as a reportable, hazardous substance and that, therefore, Olin developed triethanolamine ("TEA") as a substitute for DEA. According to Olin, the WGHF that it provided to ACT, for resale to the Plaintiff, contained TEA and "performed satisfactorily in all of the standard industry laboratory tests," and the product "achieved satisfactory results in the tests performed by Olin and ACT." On the other hand, the Plaintiff contends that, "[b]y late 1991 to early 1992, [it] began to experience extreme premature failure of the pumps and valves only on those machines into which it incorporated ACT fluid." As a result, the Plaintiff alleges that its die casting machines sustained "premature hydraulic pump, valve, and o-ring failure," which prevented the Plaintiff from producing parts to the specifications of one of its major accounts, with a resultant loss of business and an unscheduled lay-off of its employees.

In February of 1994, the Plaintiff commenced this action alleging claims against Olin and ACT for breach of warranty, strict liability, misrepresentation and a violation of the Minnesota Consumer Fraud Act. As a part of its discovery effort, the Plaintiff noted the deposition of Skoog, who is Houghton's

---

**1.** The Plaintiffs had also moved the Court for an Order that would direct Olin to answer interrogatories and to permit the inspection, or to otherwise respond to the Plaintiff's request for the production of documents. In turn, Olin had moved the Court for an Order compelling the Plaintiff to supplement earlier discovery requests. The parties advise, however, that these discovery matters have been amicably resolved and, therefore, we deny these Motions as moot.

Marketing Manager for fluid power products. We are advised that Skoog holds a B.S. Degree in chemistry from the Virginia Polytechnic Institute and State University, that he has worked for Houghton for seventeen years, and that, prior to becoming the Marketing Manager, he held positions with the Company as a laboratory technician, research and development chemist, and field service engineer. As Olin concedes, "Skoog developed the additive package used in all of Houghton's water glycol hydraulic fluid products and, during his career at Houghton, has been extensively involved in the testing and analysis of water glycol hydraulic fluids."

Preliminary to the deposition of Skoog, the Plaintiff served a subpoena *duces tecum* upon Houghton, which requested the production of "the testing Houghton performed on Hartzell's fluid, conclusions Houghton had drawn from that testing and any visual inspection of Hartzell's corroded hydraulic parts, the use of WGHF buffer blends, the effect of the presence of formate in WGHF, the use of diethanolamine (DEA) and triethanolamine (TEA) in WGHF, Houghton's familiarity with ACT and Olin's WGHF products gained through its own sales force and through industry contacts, Houghton's line of WGHF products, its fluid maintenance and testing practices, and the compatibility of Houghton and ACT's fluids." As an additional preliminary to the deposition, counsel for the parties had occasion to separately meet with Skoog in order to familiarize themselves with the nature of his anticipated testimony.

Fearing that Skoog's deposition was the Plaintiff's end-run around its failure to identify Skoog as an expert witness or to disclose the opinions and bases for any opinions that he held, counsel for the Defendants objected to any testimony that Skoog could give which would constitute expert opinion evidence. Counsel for the Plaintiff has, however, disavowed any interest in eliciting expert opinion evidence from Skoog, and the parties memorialized their stipulated agreement, as to the content of Skoog's deposition, as follows:

MR. HOGAN [Counsel for Houghton]: Before we started here, there are certain agreements that all the parties have reached through cooperation. * * * First, each of the parties agree that they are not taking the deposition of Peter Skoog today for the purpose of obtaining expert opinion, nor does any party intend to call Peter Skoog to testify as an expert at the trial of this matter.

[Counsel for all parties express their agreement].

MR. HOGAN: Secondly, the parameters of Mr. Skoog's deposition here today, he will testify to authenticate the records that have been produced by Houghton. He will testify to what happened factually during the relevant time period. He will testify as to what tests Houghton has run and the results of those tests, including whether or not any tests were run subsequent that would change the results of these tests—conclusions of these tests. And he will testify as to Houghton's parameters regarding pH in their particular products.

[Counsel for all parties express their agreement].

*　　*　　*　　*　　*　　*

MS. JOHNSON [Counsel for Olin]: I would like to make a statement. The defendants have agreed to proceed with this deposition based upon the foregoing stipulation. By so doing, we do not agree to waive any objections we may raise if the testimony goes beyond the agreed-upon scope.

Thereafter, the deposition of Skoog ensued, but with repeated objections as to the scope of Skoog's testimony. In defense of its questioning, the Plaintiff maintained that, under Rule 701, Federal Rules of Evidence, Skoog could properly express lay witness opinions, and that his testimony had not overstepped those bounds. In turn, Olin and ACT both contend that Skoog's testimony was merely expert opinion garbed in lay witness dressing. Being unable to resolve the matter amicably, and being unsuccessful in reaching this Court for a resolution that would have been contemporaneous with Skoog's deposition, the parties abandoned the deposition in order to further address the matter before this Court.

### III. Discussion

A. *Standard of Review.* Rule 701 provides as follows:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

"The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance and an endless number of items that cannot be described factually in words apart from inferences." *Asplundh Manufacturing Division v. Benton Harbor Engineering,* 57 F.3d 1190, 1196 (3rd Cir.1995). As such, lay witness opinion became an acceptable "shorthand rendition" of a conglomeration of facts which, otherwise, could "not be described in sufficient detail to adequately convey to the jury the substance of the testimony." *Wactor v. Spartan Transp. Corp.,* 27 F.3d 347, 350–51 (8th Cir.1994), quoting *Krueger v. State Farm Mut. Auto. Ins. Co.,* 707 F.2d 312, 317 (8th Cir.1983).

 From these fairly modest beginnings, Rule 701 has been interpreted expansively so as to permit the admission of an opinion, if it is based upon "relevant historical or narrative facts that the witness has perceived," *United States v. Oliver,* 908 F.2d 260, 263 (8th Cir.1990), quoting *Teen–Ed, Inc. v. Kimball Intern., Inc.,* 620 F.2d 399, 403 (3d Cir.1980), and "if it would help the factfinder determine a matter in issue."

**2.** Rule 702, Federal Rules of Evidence, states as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

As to the bases for expert opinion evidence, Rule 703, Federal Rules of Evidence, provides as follows:

*United States v. Oliver,* supra at 263, quoting *Hurst v. United States,* 882 F.2d 306, 312 (8th Cir.1989). This broadening of Rule 701's application arises from the grafting of Rule 602's prohibition against the admission of "testimony concerning matters the witness did not observe or had no opportunity to observe." *United States v. Oliver,* supra at 263. Indeed, our Court of Appeals has concluded that "[p]ersonal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony." *Burlington Northern R. Co. v. State of Neb.,* 802 F.2d 994, 1004 (8th Cir.1986), citing *Farner v. Paccar, Inc.,* 562 F.2d 518, 520 (8th Cir.1977), and *Gravely v. Providence Partnership,* 549 F.2d 958, 961 (4th Cir. 1977). Moreover, the mere fact that the witness, by virtue of his education, training or experience, is capable of being qualified as an expert, does not serve as a valid objection to his expression of lay opinion testimony. *Farner v. Paccar, Inc.,* supra at 529 (8th Cir.1977). In view of this "modern trend favor[ing] the admission of opinion testimony," some of the former distinctions, between Rule 701 and Rule 702's[2] expert testimony, may tend to blur somewhat. *Teen–Ed, Inc. v. Kimball Intern., Inc.,* supra at 403. Nevertheless, as recognized by the Court of Appeals for the Third Circuit, certain clear distinctions still exist:

The essential difference, however is that a qualified expert may answer hypothetical questions. * * * Thus, an expert witness may not only testify from "facts or data * * * perceived by him," but also from what is "made known to him at or before the hearing." Fed.R.Evid. 703.

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

In contrast, the lay witness's opinion testimony must be based upon his or her personal perceptions and, unavoidably, those perceptions must be of a type that are admissible in evidence.

*Id.* at 404.[3]

Where the lay witness's testimony is based upon perceptions, which are insufficient to allow the formation of an opinion that would be helpful to an understanding of the facts of the case but, instead, merely expresses the witness's beliefs, then the opinion testimony should be excluded. *United States v. Cortez,* 935 F.2d 135, 139–40 (8th Cir.1991), cert. denied, 502 U.S. 1062, 112 S.Ct. 945, 117 L.Ed.2d 114 (1992).

B. *Legal Analysis.* As the law of this Circuit reflects, the legal issues before us are not of first impression, and we are called upon to do no more than to apply the settled law of this Circuit. Nor are we confronted with a challenge to Skoog's competence to express an opinion on the factual matters at issue. Indeed, we read Olin's objection to be that Skoog is sufficiently qualified to serve as an expert witness and that, as a consequence, the Plaintiff should not be permitted to circumvent the disclosure requirements of Rule 26(a)(2). Accordingly, we need not address the Court's "gate-tending" obligations, under Rule 701, which recently preoccupied the analysis in *Asplundh Manufacturing Division v. Benton Harbor Engineering,* supra, as we are satisfied that the parties have made the necessary showing that Skoog has the requisite personal, technical and industry experience to render competent lay witness opinion testimony.

---

**3.** In like vein, the Supreme Court has recently observed:

> Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on first hand knowledge or observation. See Rules 702 and 703. Presumably, this relaxation of the usual requirement of first-hand knowledge—a rule which represents "a 'most pervasive manifestation' of the common law insistence upon 'the most reliable sources of information,' " Advisory Committee's Notes on Fed. Rule Evid. 602 (citation omitted)—is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993).

**4.** Of course, our obligation is to apply the law and not to make it. Therefore, we have no occasion to comment upon the desirability of an

---

■ What, then, may Skoog proffer in the way of lay opinion testimony? Given the precedential authorities in this Circuit, it is clear that Skoog may testify to his personal observations at the Plaintiff's facility, which relate to the subject matter of this litigation. What he observed and what he informed the Plaintiff's management are historical facts that are the grist of lay witness testimony. He may also testify to the knowledge that he has gained from his industry experience, and from his review of the records that have been prepared by Houghton in the ordinary course of Houghton's business pursuits. See, *Burlington Northern R. Co. v. State of Neb.,* supra at 1004–05. He is not an expert witness, however, and he may not be prepared as such. Therefore, he is not the proper witness to respond to hypothetical facts or circumstances, *nor is he the witness who* would be competent to review documents that are extraneous to Houghton's business records, or his own industry experience, merely so he would have a basis to form opinion testimony.

So long as Skoog's testimony is confined to these generalized areas, neither Olin nor ACT have serious grounds to complain. First, we understand that defense counsel had an opportunity to confer with Skoog prior to his deposition, and his testimony, inclusive of any opinions he may render, are fully open to proper cross-examination.[4] As

---

expansive reading of Rule 701, or how a broadly construed Rule 701 may defeat the salutary notice requirements that generally attend the provision of expert testimony—that is, testimony that is founded upon "scientific, technical, or other specialized knowledge." Where, as here, some unfairness may arise from a deposition, which may be offered in lieu of Skoog's in-Court testimony, we think that Rule 1, Federal Rules of Civil Procedure, would require precautions to assure that the presentation of Skoog's testimony will be "just, speedy, and inexpensive." Accordingly, we direct that, at least one week before the rescheduled taking of Skoog's deposition, counsel for the parties shall be provided with the documents which respond to the Plaintiff's subpoena *duces tecum* or, at a minimum, be afforded the opportunity to inspect those documents. Armed with the factual premises for Skoog's testimony, we can envision no disadvantage in the Plaintiff's calling Skoog to testify as a lay witness on matters which, arguably, have the content and flavor of expert opinion.

well, the foundation for Skoog's testimony must, necessarily, be grounded upon facts which are admissible in evidence and which, unavoidably, are freely subject to cross-examination. While aspects of Skoog's testimony may find its source in the amorphousness of "industry experience," the Defendants are not limited in their ability to counter such testimony, to the extent that circumstances so warrant, by the testimony of the Defendants' technical staff, or by their experts. Given these generalized boundaries of permissibility, we believe that the parties will be able to elicit Skoog's testimony with a minimal degree of dispute. Absent our ability to hear the precise questions put to Skoog, we are unable to more definitively specify the proper scope of his testimony. Obviously, however, Skoog's appearance as a lay witness does not exempt his testimony from otherwise complying with the Federal Rules of Evidence, in all of their particulars.

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion to Compel the testimony of Skoog, as a non-expert witness [Docket No. 65] is GRANTED.

2. That, at least one week before the rescheduled deposition of Skoog is to be taken, the parties are to receive copies, or an opportunity to review, the documents that Skoog has produced, or will produce, in response to the Plaintiff's subpoena *duces tecum.*

3. That the Plaintiff's Motions to Compel Olin to answer interrogatories and to permit inspection, or to otherwise respond to the Plaintiff's requests for production of documents [Docket Nos. 56 and 60] are DENIED as moot.

4. That Olin's Motion to Compel a supplementation of the Plaintiff's discovery responses [Docket No. 62] is DENIED as moot.