**UNITED STATES of America, Appellee,**

v.

**Michael Robin BURGESS, Defendant–Appellant.**

**Docket No. 98–1614.**

United States Court of Appeals, Second Circuit.

Argued April 28, 1999.

Decided June 9, 1999.

---

**38**

Darrell B. Fields, Associate Appellate Counsel, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for Defendant–Appellant.

Eric A. Tirschwell, Assistant United States Attorney, Brooklyn, N.Y. (Zachary W. Carter, United States Attorney for the Eastern District of New York, Peter A. Norling, Assistant United States Attorney, Brooklyn, NY, on the brief), for Appellee.

Before: WALKER and POOLER, Circuit Judges, and MOTLEY, District Judge.*

JOHN M. WALKER, JR., Circuit Judge:

This is an appeal from the judgment of the United States District Court for the Eastern District of New York (Allyne Ross, *District Judge*), following a guilty plea, convicting defendant-appellant Michael Robin Burgess of one count of using a United States passport issued and designed for the use of another, in violation of 18 U.S.C. § 1544. Burgess was sentenced under the "criminal livelihood" provision of the United States Sentencing Guidelines ("U.S.S.G."), *see* U.S.S.G. § 4B1.3, to eighteen months' imprisonment, to be followed by a three-year term of supervised release. The district court also fined Burgess $3,000 and imposed a $100 special assessment.

On appeal, Burgess challenges the district court's application of the criminal livelihood enhancement, which applies when a defendant commits "an offense as part of a pattern of criminal conduct engaged in as a livelihood." *Id.* First, he contends that because his illegal passport use was not itself a crime committed for monetary gain, the enhancement is inapplicable. Second, he argues that the enhancement was unwarranted because there was insufficient evidence that any "pattern of criminal conduct" yielded the requisite financial gain under U.S.S.G. § 4B1.3. We affirm.

## BACKGROUND

On December 8, 1997, Israeli authorities arrested Burgess at Ben Gurion International Airport in Tel Aviv for attempting to enter Israel from the Czech Republic using a United States passport issued in the name of Adam Conway. Investigation determined that Conway was a certified public accountant from Ohio whose passport had been stolen in Luxembourg in June of 1997 along with his camera, traveler's checks, credit cards, and social security card. Israeli authorities also found in Burgess's possession another United States passport in the name of "Michael Sturges," an Australian passport in the name of "Ron Higs" bearing Burgess's picture, eighteen Australian passport "cover pages," and various traveler's checks and credit cards in an unspecified number

---

* The Honorable Constance Baker Motley, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

of identities. It was later uncovered that Burgess had obtained the "Michael Sturges" passport in May of 1997 by falsely claiming to United States Embassy officials in Bonn, Germany that his name was "Michael William Sturges" and that his money and passport had been stolen.

Following Burgess's arrest, he was returned to the United States for prosecution. Upon arriving at John F. Kennedy International Airport in New York on January 15, 1998, Burgess gave a statement to State Department officials. As summarized in the presentence report ("PSR"), which was prepared by the Probation Department in the Eastern District of New York and presented to the district court below:

> The defendant revealed that he had established a lifestyle based upon perpetrating fraud for personal profit, supporting himself as a "scam artist." According to the defendant[,] ... whereas a "con artist" defrauds individual people, a scam artist creates the impression of being someone who he is not, thereby enabling him to defraud "the system," which is comprised most notably of banks and other financial institutions. The defendant explained that he was able to acquire numerous fraudulent documents which he employed to establish multiple identities; he then used the false identities for the purpose of concealing his true identity as he fraudulently obtained currency for himself at various financial institutions.
>
> Typically, according to the defendant, he would obtain a state driver's license from the United States in a false identity, and then use the fraudulent license to open a "Eurocheck" account in that identity, depositing from a few hundred to a few thousand United States dollars upon opening the account. The defendant would thereby acquire bank identification in the false name, as well as bank-certified checks in an amount equal to that which he had fraudulently deposited. He would then duplicate the certified checks and deposit photocopied "checks" at various banks in the same city, using several false identities, during the course of one day. The defendant would thus acquire currency based upon the face value of the fraudulent checks before the "checks" could be completely processed; *he would then relocate to another city or country, where he would repeat the pattern of deception.*

Burgess also stated that his goal in perpetrating the fraud was "to continue perpetrating fraud in the manner described ... in order to save $300,000 and retire to Argentina." Furthermore, he boasted of success in his endeavors, claiming that he had "a considerable amount of money stored in various banks in different countries."

On February 12, 1998, the grand jury returned an indictment charging Burgess with making a false statement in his application for a United States passport, in violation of 18 U.S.C. § 1542, and using a passport issued to another person, in violation of 18 U.S.C. § 1544.

On March 4, 1998, Burgess pleaded guilty to the § 1544 violation (for using the Conway passport). At the time of the plea, the parties estimated that Burgess would have a base offense level of eight pursuant to U.S.S.G. § 2L2.2, that two points would be deducted for acceptance of responsibility, and that, assuming Burgess fell within Criminal History Category IV, the resulting guidelines range would be six to twelve months. The plea agreement made clear, however, that the appropriate criminal history category remained subject to further investigation by the Probation Department.

### A. *Presentence Report*

The Probation Department, in a PSR issued on July 27, 1998, linked Burgess to a pattern of criminal conduct, both charged and uncharged. Burgess's criminal history included four convictions. In late 1992, he was convicted in Florida for

uttering a false instrument based on his attempt to cash a stolen check. In January 1994, Burgess was convicted in Canada for possessing stolen property and impersonation based on his attempt to obtain a cash advance from a Vancouver bank, using the credit card of a person named Todd Ferguson. During that attempted transaction, Burgess produced identification cards with Todd Ferguson's name but with Burgess's photograph. He also used a birth certificate in Ferguson's name. The real Todd Ferguson reported his credit card missing from a youth hostel in Belgium in November, 1993, when Burgess was also in Belgium.

Burgess's third conviction followed soon thereafter, in February, 1994, when he was arrested for forgery in Oregon arising out of his attempt to cash a check drawn on an account Burgess had opened in Todd Ferguson's name. In post-arrest statements, Burgess admitted to obtaining Ferguson's identification while traveling overseas.

Burgess's fourth conviction was for a residential burglary committed in Napa County, California, in March, 1994. In that instance, Burgess had forcibly broken into his aunt's home and stolen a collection of figurines, along with several financial papers and other items. Burgess later admitted to selling the figurines at pawn shops in Oregon.

The PSR also reflected two additional arrests, one for possession of a stolen vehicle in 1992 and the other relating to a 1994 attempt to pass a check stolen from the American Legion in Oregon. In addition, the PSR linked Burgess to several other crimes, including a November 1997 fraudulent cashing of a traveler's check in Prague. The check, worth about $500, had been stolen from a German woman by a man fitting Burgess's description using an Australian passport that matched the name and number of one of the Australian passport cover pages found in Burgess's possession at the time of his arrest in December, 1997. The PSR also discussed numerous additional reports of Burgess's alleged involvement in passport-related fraud in various European countries, two instances of attempted fraud in April, 1994 using stolen American Legion checks, and the theft of his grandfather's rare coin collection.

Based on Burgess's extensive criminal history, the PSR recommended that Burgess be sentenced pursuant to U.S.S.G. § 4B1.3, which provides for a sentencing enhancement when "the defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood." § 4B1.3. Application Note 2 to § 4B1.3 requires that the defendant have "derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law." *Id.* at app. n. 3. The parties agree that the minimum wage is $5.15, which, multiplied by 2,000, equals $10,300. The Probation Department concluded that Burgess had earned this amount based on the fact that when he filled out a personal financial statement submitted to the Probation Department, he wrote $3,000 under a column asking for monthly income, without any explanation as to how he supported himself, other than alluding to an occupation of "printing" in countries such as the Netherlands.

### B. Sentencing Proceedings

At sentencing, Burgess opposed the recommended § 4B1.3 enhancement. He contended that the instant offense was not part of the pattern of income-producing criminal conduct set forth in the PSR, because there was no evidence that when Burgess used the Conway passport he was attempting to commit a theft or otherwise obtain money.

The district court rejected this argument, and found that Burgess had admitted to "a pattern of criminal conduct involving the fraudulent use of fake or stolen identity cards and passports to obtain loans, cash, make checks, and then to de-

part for another country." Adopting the definition of "pattern of criminal conduct" set forth by the Eighth Circuit in *United States v. Oliver,* 908 F.2d 260, 266 (8th Cir.1990), the district court held that "the charged conduct clearly share[d] a method of commission with the pattern of criminal activity" and was "closely interrelated with the defendant's admitted livelihood as an international scam artist who specializes in assuming false identities."

Finally, the district court found by a preponderance of the evidence that Burgess earned at least $10,300 in a twelve-month period from the pattern of criminal conduct and that such conduct was his "primary occupation." The district court based this finding on the fact that Burgess admitted that he earned his living as a scam artist, that he had declared a monthly income of $3,000 and expenses of $2,000, and that he admitted to keeping his money in foreign bank accounts under assumed names.

## DISCUSSION

Burgess challenges the district court's application of § 4B1.3 of the sentencing guidelines. He contends that, under § 4B1.3, the instant offense must be, but was not in this case, a crime committed for pecuniary gain in order for it to be "part of a pattern of criminal conduct engaged in as a livelihood." Burgess's second contention is that there was insufficient evidence to support the district court's finding that he had obtained $10,300 from the alleged pattern of criminal activity.

In reviewing the application of the guidelines by the district court, we examine factual determinations for clear error; legal questions, however, are subject to *de novo* review. *See United States v. Chacko,* 169 F.3d 140, 150 (2d Cir.1999).

A. *Requirement that the offense be "part of a pattern of criminal conduct engaged in as a livelihood"*

We easily dispose of Burgess's first contention—that § 4B1.3 requires that the

instant offense, itself, be income-producing—by simply referring to the text of § 4B1.3, and the accompanying application notes. Section 4B1.3 provides:

> If a defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood, his offense level shall be not less than 13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than 11.

§ 4B1.3. Application Note 1 to this provision states that " '[p]attern of criminal conduct' means planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct or independent offenses." *Id.* at app. n. 1. Section 4B1.3 "attempts to assure adequate punishment for those defendants who prey on society for their livelihood." *United States v. Blake,* 81 F.3d 498, 504 (4th Cir.1996).

We believe that the plain language of § 4B1.3 refutes Burgess's legal contention that the instant offense must be income-producing for a defendant to qualify for the criminal livelihood enhancement. Instead, the provision makes clear that the instant offense must simply be *"part of* a pattern of criminal conduct engaged in as a livelihood." § 4B1.3 (emphasis added); *see also Oliver,* 908 F.2d at 265 ("If the district court finds that the defendant has engaged in a 'pattern of criminal conduct from which he derived a substantial portion of his income,' it must then determine whether the present offense is 'part' of that pattern.") (quoting prior version of § 4B1.3). Moreover, the record amply supports the district court's factual finding, based largely on Burgess's admissions contained in the PSR, that the passport offense in this case, while not itself an income-producing crime, was part of a larger and sustained pattern of criminal conduct that Burgess engaged in as a livelihood. Burgess's use of another's passport permitted Burgess to travel anonymously from country to country de-

frauding various financial institutions in pursuit of his livelihood.

### B. *$10,300 annual income requirement*

 Application Note 2 to § 4B1.3 states that:

> "Engaged in as a livelihood" means that (1) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded [$10,300]; and (2) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve month period (*e.g.*, the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for his criminal conduct).

§ 4B1.3, app. n. 2.

Burgess contends that the district court erred in adopting the PSR's finding that he had obtained more than $10,300 from criminal activity over a twelve-month period. He argues that the district court wrongly premised its finding on Burgess's disclosure that his monthly income was $3,000, because Burgess did not specify the number of months during which he had earned $3,000. We disagree.

We believe that the district court was entitled to infer from the $3,000 monthly income figure that defendant's financial gain from the twelve-month period preceding his December 1997 arrest exceeded $10,300. In fact, the district court's finding in this regard was fully supported by other direct and circumstantial evidence in the record, such as Burgess's disclosure that he had $2,000 per month in expenses, his statement to State Department officials that he had a considerable amount of money stored in foreign banks in different countries, and the absence of any proof that Burgess had any legitimate employment during the relevant period. In short, we find that the record amply supported the district court's finding that Burgess's "pattern of criminal conduct" resulted in income in excess of $10,300 in a twelve-month period.

### CONCLUSION

We affirm the judgment of the district court.