**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-4515 |
| *Plaintiff - Appellee*, | D.C. No. 9:23-cr-00042-DLC-1 |
| v. | |
| SHAYDEN BRADLEY WESTFALL, | OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Submitted June 9, 2025[*]
Portland, Oregon

Filed July 10, 2025

Before: Richard C. Tallman, John B. Owens, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge Tallman

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

# SUMMARY[**]

## Criminal Law

The panel affirmed the district court's denial of Shayden Bradley Westfall's motion to suppress evidence seized from searches of his hotel room, vehicles, and phones.

The Missoula Police Department received information from a reliable source that Westfall had recently received a distributable quantity of drugs at a Missoula hotel room. After independently corroborating the source's information, officers obtained a search warrant for the room, where they found methamphetamine, fentanyl, and a firearm. Based on the seizure and Westfall's incriminating statements following the search, officers obtained another warrant for Westfall's Facebook records, which were stored at the company's headquarters in California.

Westfall was indicted for conspiracy to distribute and possess with the intent to distribute fentanyl, possession with intent to distribute fentanyl, and possession of a firearm in furtherance of a drug trafficking crime. Denying Westfall's motion to suppress, the district court found that each search warrant was valid based upon ample probable cause, and that the issuing state court was authorized by law to issue a warrant for subscriber information outside Montana. Westfall entered a conditional guilty plea.

On appeal, Westfall argued that the evidence from the hotel room and Facebook should be suppressed because the

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

search warrant for the hotel room lacked probable cause, and because the Montana state district court lacked jurisdiction to issue a warrant for out-of-state electronic records.

The panel rejected both arguments. First, law enforcement's independent corroboration of information obtained from a reliable source gave the issuing judge a substantial basis to conclude that there was sufficient probable cause to issue the search warrant for the hotel room. Second, a Montana district court judge has jurisdiction under the federal Stored Communications Act and Montana law to issue a search warrant executable for retrieving electronic records stored out-of-state.

**COUNSEL**

Jennifer Clark, Assistant United States Attorney, Office of the United States Attorney, United States Department of Justice, Missoula, Montana; Tim A. Tatarka and Jennifer S. Clark, Assistant United States Attorneys; Jesse A. Laslovich, United States Attorney; Office of the United States Attorney, United States Department of Justice, Billings, Montana; for Plaintiff-Appellee.

Shandor S. Badaruddin, Shandor S. Badaruddin PC, Missoula, Montana, for Defendant-Appellant.

**OPINION**

TALLMAN, Circuit Judge:

The Missoula Police Department received information from a reliable source that Defendant-Appellant Shayden Bradley Westfall had recently received a distributable quantity of drugs at a Missoula hotel room. After independently corroborating the source's information, officers obtained a search warrant for the room, where they found methamphetamine, fentanyl, and a firearm. Based on the seizure and Westfall's incriminating statements following the search, officers obtained another warrant for Westfall's Facebook records, which were stored at the company's headquarters in California.

Westfall was indicted for conspiracy to distribute and possess with the intent to distribute fentanyl, possession with intent to distribute fentanyl, and possession of a firearm in furtherance of a drug trafficking crime. He filed a motion to suppress the evidence seized from searches of his hotel room, vehicles, and phones. After an evidentiary hearing, the federal district court denied the motion, finding that each search warrant was valid based upon ample probable cause, and that the issuing state court was authorized by law to issue a warrant for subscriber information outside Montana. Westfall subsequently conditionally pled guilty and was sentenced to 88 months of imprisonment.

On appeal, Westfall again argues that the evidence from the hotel room and Facebook should be suppressed because the search warrant for the hotel room lacked probable cause, and the Montana state district court lacked jurisdiction to issue a warrant for out-of-state electronic records. Both of Westfall's arguments fall short.

First, law enforcement's independent corroboration of information obtained from a reliable source gave the issuing judge a substantial basis to conclude that there was sufficient probable cause to issue the search warrant for the hotel room. Second, a Montana district court judge has jurisdiction under the federal Stored Communications Act ("SCA") and Montana law to issue a search warrant executable for retrieving electronic records stored out-of-state. Accordingly, we affirm the federal district court's denial of Westfall's motion to suppress.

# I

On December 4, 2022, a confidential informant ("CI") informed Missoula Police Officer Clark Nissley that the Missoula Police Department had recently seized the vehicle of a suspect named Dustin Slaney. According to the CI, prior to the vehicle seizure Slaney had delivered distributable quantities of drugs to an individual known by the moniker "Shade West," who was occupying Room #428 at the Staybridge Suites located at 120 Expressway, Missoula, Montana. The CI had previously provided information that law enforcement found to be accurate after independent corroboration and which had led to multiple dangerous drug seizures.

Officer Nissley corroborated the CI's tip. First, he reviewed the relevant Missoula Police Report and confirmed that $4,581 in cash had been seized from one of the occupants of Slaney's vehicle.[1] Second, Officer Nissley

---

[1] Officer Nissley's search warrant application for Room #428 explained that he "knows from his training and experience that persons who engage in the possession, sale, and/or purchasing of dangerous drugs will commonly keep large sums of money on their persons or in a secure location (i.e. vehicle, lockbox, safe)."

contacted Staybridge Suites, which informed him that an individual identifying herself as Alyssa Hockman had checked into Room #428 on December 3, 2022.  Hockman had booked Room #428 from December 3 to December 6 for two adults with no additional guests listed.  Police records revealed that Hockman had a criminal history that included charges for dangerous drug offenses, deceptive practices, and theft.  Officer Nissley also learned from hotel staff that shortly after Hockman checked in, Rebecca Piper entered the hotel and had Room #428's reservation changed to be listed under Piper's name rather than Hockman's.[2]

That same day, Officer Nissley applied for the search warrant for Staybridge Suites Room #428 based on the totality of the information that he gathered, as well as his knowledge, training, and experience investigating drug crimes.  A Montana district court judge for Missoula County approved the search warrant the same day, and Missoula police officers executed the search warrant shortly after its issuance.  Police knocked on the door of Room #428, announced themselves as members of the Missoula Police

---

[2] In his supporting search warrant affidavit for Room #428, Officer Nissley explained that he "knows from his training and experience that it is common for persons who engage in criminal activity [to] use false names or names of other persons when registering for a hotel room, in order to further mask the identity of the persons using the room."  Officer Nissley believed, based on his prior training and experience, that Hockman and Piper were using Piper's name on the hotel room because Hockman's name is recognizable by local law enforcement given her criminal history.  He also described knowing "from his training and experience that persons who engage in the possession, sale, and/or purchasing of dangerous drugs will commonly use hotel rooms as locations to complete dangerous drug transactions" because they are difficult for law enforcement to track and detect relative to using their residential addresses.

Department, and ordered the occupants to come to the door. The occupants did not comply, so officers forced entry.

Upon entry, officers observed Westfall moving toward the room's window. Though Westfall initially failed to comply with the officers' orders to stop, show his hands, and stop resisting, they eventually subdued and handcuffed Westfall. Hockman was also in the room when the officers entered and she was also detained. Both Hockman and Westfall were advised of their *Miranda* rights. Westfall waived his *Miranda* rights and identified himself by name and by his alias, "Shade." Westfall also admitted that he was staying in the room under Rebecca Piper's name.

Officers observed a handgun and a large quantity of blue pills scattered on the floor of Room #428, which Officer Nissley recognized as suspected fentanyl pills. In all, the Room #428 search resulted in the seizure of 1,891 suspected fentanyl pills, two packages of methamphetamine totaling approximately 14 grams, two packages of suspected fentanyl powder totaling approximately 3.75 grams, a stolen handgun, drug paraphernalia, and four 12-gauge shotgun shells.

Westfall eventually admitted that he had been fronted approximately 1,000 fentanyl pills and one-half ounce of methamphetamine with the expectation that Westfall would sell the drugs for a net profit of $4,000 to $5,000 for the fentanyl pills and $300 for the methamphetamine. Westfall stated that he had been selling dangerous drugs obtained from suppliers in Missoula for five months, and he admitted that he had attempted to discard the drugs out of the hotel room's window as police forced entry. Westfall also admitted that he had traded 30 fentanyl pills to Slaney in

exchange for the handgun, which police determined was stolen.

Based on the evidence seized and admissions obtained while executing the Room #428 search warrant, Officer Nissley then applied for another search warrant seeking Westfall's Facebook and Facebook Messenger records from Meta Platforms, Inc. (Meta), a company located in Menlo Park, California. That warrant was also approved by a Montana district court judge and was executed on or about January 12, 2023, by service on Meta at its headquarters.[3]

## II

Westfall was indicted in federal district court on one count of conspiracy to distribute and to possess with intent to distribute fentanyl, one count of possession with intent to distribute fentanyl, and one count of possession of a firearm in furtherance of a drug trafficking crime. Westfall then moved to suppress (1) the fruits of the Room #428 search on the grounds that the warrant application lacked probable cause, and (2) the fruits of the Facebook search because, according to Westfall, the Montana court lacked jurisdiction to issue an extraterritorial warrant.

After an evidentiary hearing, the federal district court denied Westfall's motion. On the first issue, our district court held that the issuance of the Room #428 search warrant was not clearly erroneous because "the totality of the circumstances set forth in the search warrant application

---

[3] Officer Nissley also later applied for and obtained another search warrant for Westfall's cellphone relying upon the evidence seized and admissions made during the execution of the Room #428 search warrant. Westfall argues that the cellphone evidence should be suppressed because that search warrant included the tainted fruits of the Room #428 search warrant, which he claims was invalid for lack of probable cause.

provided a fair probability that contraband or evidence of a crime would be found" in the hotel room. Officer Nissley had independently corroborated the information he received from a reliable source, which, based on Officer Nissley's training and experience, aligned with potential drug trafficking activity. Because there was probable cause to issue the Room #428 search warrant, our district court determined that Westfall's arguments regarding the sufficiency of the affidavits supporting the subsequent search warrants also failed.

On the second issue, the federal district court held that the Montana state district court had jurisdiction to issue a warrant authorizing the search and seizure of Westfall's Facebook communications, even though they were stored out of state. Our district court described two legal pathways for the Montana state district court to issue valid extraterritorial warrants. The first pathway is a Montana law authorizing the service of a state district court warrant for electronic communications on providers "doing business in this state under a contract or a terms of service agreement with a resident of this state if any part of that contract or agreement is to be performed in this state." Mont. Code Ann. § 46-5-605(3)(a). The federal district court rejected Westfall's argument that section 605(3)(a) did not apply because it requires the target of the warrant—i.e., the individual whose communications are being sought—to be a Montana resident and Westfall is not. Our district court explained that the plain language of section 605(3)(a) required only that the business holding the records was generally doing business with *a* (i.e., any single) resident of Montana, not specifically with the target of the criminal investigation about whom the information is sought.

Our district court also identified a second pathway providing jurisdiction to issue an out-of-state warrant for stored electronic communications records: the SCA. The federal district court reasoned that Montana district courts are "courts of competent jurisdiction" under the SCA because they have general jurisdiction over all criminal cases amounting to a felony. *See* 18 U.S.C. § 2711(3)(B).[4] The district court explained that the SCA's requirement that an electronic communications warrant be issued "using State warrant procedures," 28 U.S.C. § 2703(A), does not limit a state court's jurisdiction; it only "address[es] the specific method or particular way to issue a warrant[.]" Accordingly, our district court concluded that both Montana law and the SCA gave Montana district court judges the authority to issue a search warrant for electronic communications held out of state by Meta.

## III

Our district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. "A district court's denial of a motion to suppress is reviewed *de novo*, while the factual findings underlying the denial of the motion are reviewed for clear error." *United States v. Yang*, 958 F.3d 851, 857–58 (9th Cir. 2020).

## IV

We address each issue Westfall raises in turn.[5]

---

[4] The SCA defines "court of competent jurisdiction" to include "a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants." 18 U.S.C. § 2711(3)(B); *see also* Mont. Code Ann. §§ 46-2-201, 46-5-220.

[5] Specifically, Westfall argues that the following evidence should be suppressed because it was seized as a result of an invalid warrant: all

## A

"We review the issuance of a search warrant deferentially, upholding it if the issuing judge had a substantial basis for concluding [that] probable cause existed based on the totality of circumstances." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (internal quotation marks and citation omitted). An issuing judge's "determination that an affidavit provided probable cause to issue a search warrant will be upheld unless clearly erroneous." *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2004).

Probable cause exists where, under the totality of the circumstances set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When assessing probable cause based on information supplied by a confidential informant, the key inquiry is whether the information was sufficiently reliable. *See id.* at 233. Law enforcement's independent corroboration of information provided by an informant provides significant weight to that information. *See id.* at 241 (stating that the Court has "consistently recognized the value of corroboration of details of an informant's tip by independent police work"); *see also Draper v. United States*, 358 U.S. 307, 313 (1959).

---

drugs, contraband and paraphernalia seized from Room #428, Westfall's incriminating statements, and Hockman's statements. Westfall also argues that evidence obtained via subsequent warrants, including the warrant for Meta, should be suppressed because those warrants referenced "tainted information"—evidence seized during the Room #428 search.

Westfall argues that the issuing judge lacked a substantial basis for concluding contraband or evidence of a crime would be found in Room #428. More specifically, Westfall seems to suggest that the warrant was insufficient because it contained no information linking Westfall to Room #428. We disagree. The Montana district court properly concluded that the search warrant for Room #428 was based on probable cause.

The totality of the circumstances set forth in the search warrant application provided a "fair probability that contraband or evidence of a crime will be found in a particular place"—here, in Room #428. *Gates*, 462 U.S. at 238. Officer Nissley received information from a reliable source that an individual who had recently received distributable quantities of drugs was occupying Room #428 at the Staybridge Suites. The CI had proven reliable in previous drug investigations and Officer Nissley independently corroborated the information that the CI provided here. Officer Nissley confirmed that Slaney's vehicle had indeed recently been seized by the Missoula Police Department and that, at the time of the seizure, one of the vehicle's occupants possessed over $4,500 in cash. Officer Nissley further corroborated the CI's information by verifying that a known drug dealer was occupying Room #428 and that the name on the room had recently been changed.

Based on his training and experience, Officer Nissley connected this information to potential drug activity. *See United States v. Arrellano-Rios*, 799 F.2d 520, 523 (9th Cir. 1986) ("The experience of a trained law enforcement agent is entitled to consideration in determining whether there was probable cause."). In his search warrant affidavit, Officer Nissley explained that "persons who engage in the

possession, sale, and/or purchasing of dangerous drugs will commonly keep large sums of money on their persons or in a secure location (i.e., vehicle, lockbox, safe)," "will commonly use hotel rooms as locations to complete dangerous drug transactions," and "will commonly use false names or names of other persons when registering for a hotel room."

Contrary to Westfall's assertion, it was not necessary for Officer Nissley's warrant application to allege additional facts linking Westfall to Room #428. Officer Nissley's independent investigation corroborated the CI's information and established a fair probability that evidence, contraband, or persons connected with drug trafficking would be discovered in Room #428. Moreover, the search warrant was timely as Officer Nissley submitted the application the same day he received and corroborated the CI's information. The vehicle seizure that followed the drug delivery to Room #428 was recent and Westfall was still believed to be occupying Room #428, which was rented only the day prior. Read in a commonsense, non-technical manner, the warrant application provided sufficient particularity to support the issuing judge's probable cause determination. *See Gates*, 462 U.S. at 231–32.

Based on the totality of these circumstances, the information credited by the issuing judge to support issuance of the search warrant for Room #428 was not "clearly erroneous." *Ewing*, 588 F.3d at 1223. Accordingly, we affirm the district court's determination that the issuing judge had a substantial basis to conclude that there was sufficient probable cause to justify the search of Room #428.

**B**

We also reject Westfall's challenge to the warrant issued to Meta.  The Montana district court had sufficient authority under both federal and Montana state law to issue an extraterritorial warrant to obtain Facebook and Facebook Messenger electronic communications records stored in California.

The SCA provides:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, . . . using State warrant procedures . . . ) by a court of competent jurisdiction.

18 U.S.C. § 2703(a).  A Montana state district court is a "court of competent jurisdiction" under the SCA because Montana law establishes state district courts as "a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants."   18 U.S.C. § 2711(3)(B); *see* Mont. Const. art. VII, § 4; Mont. Code Ann. §§ 46-2-201, 46-5-220.  This reading accords with the SCA's plain language as well as its purpose: to ease "investigative delays caused by the cross-jurisdictional nature of the Internet" by authorizing nationwide service of search warrants for electronic evidence stored in a

jurisdiction other than the one where the investigation or the crime takes place. H.R. Rep. No. 107–236, at 57 (2001). Thus, existing law leaves "no doubt" that the Montana district court that issued the search warrant for Westfall's Facebook records is a "court of general criminal jurisdiction" generally authorized by Montana law to issue search warrants. *State v. Levine*, 553 P.3d 416, 419 (Mont. 2024); *see also* Mont. Const. art. VII, § 4; Mont. Code Ann. §§ 46-2-201, 46-5-220.

Westfall disagrees with this conclusion, contending that the Montana district court is not a "court of competent jurisdiction" under the SCA because, under Montana's laws and Constitution, that court lacks jurisdiction to issue out-of-state warrants. This argument fails. True, Montana district courts have general jurisdiction over all criminal cases amounting to a felony and have the authority to issue search warrants *within* Montana. Mont. Code Ann. §§ 46-2-201, 46-5-220(2)(b). But that is not all. The Montana Constitution explicitly contemplates that federal law may grant *additional* jurisdiction to its state courts. Mont. Const. art. VII, § 4 (emphasis added). Under this logic, the Montana Supreme Court held that the SCA grants jurisdiction to Montana district courts to issue extraterritorial search warrants under its terms. *Levine*, 553 P.3d at 419 ("[T]he plain language of the [Montana] Constitution . . . allows laws of the United States to confer additional jurisdiction not provided for in the [Montana] Constitution or Montana statute."). So long as a state's constitution does not bar such jurisdictional grants under federal law, the SCA provides statutory authority to state "court[s] of general criminal jurisdiction . . . authorized by the law of that State to issue search warrants" to obtain stored

electronic evidence by process issued by such courts. 18 U.S.C. § 2711(3)(B).

Westfall also argues that the Montana district court's search warrant did not comply with the SCA's requirements because Montana's "warrant procedures" do not include extraterritorial jurisdiction. 18 U.S.C. § 2703(c)(1)(A) (authorizing "court[s] of competent jurisdiction" to issue warrants for electronic communications "using State warrant procedures"). But Westfall's argument misinterprets the meaning of "procedures." As our district court emphasized, "there is a distinction between procedures for obtaining a search warrant and jurisdictional limitations for issuing a search warrant." *See Levine*, 553 P.3d at 419 (explaining that "jurisdiction, which is a threshold question of authority, is not the same as procedure"). Indeed, the Montana Supreme Court rejected this very argument, concluding that the SCA's requirement to use state warrant *procedures* does not limit the *jurisdiction* provided by the SCA. *Id.* Instead, the Montana Supreme Court found that 18 U.S.C. § 2703(c)(1)(A) merely requires courts to follow state warrant procedures when issuing warrants under the SCA. *Id.*

We agree with the Montana Supreme Court. The SCA's requirement that a state "court of competent jurisdiction" issue a warrant for electronic communications using "State warrant procedures" means exactly what it says: The SCA incorporates provisions of state law that address the specific methods for issuing a warrant. *See id.* When state courts of general criminal jurisdiction authorized to issue warrants under state law issue warrants under the SCA, they must follow state law governing warrant procedures. 18 U.S.C. § 2703(c)(1)(A).

Westfall cites *United States v. Webb* to support the argument we now reject.  No. CR 19-121-BLG-SPW-1, 2021 WL 22720 (D. Mont. Jan. 4, 2021).  *Webb* involved a Montana district court warrant for cell-site location information ("CSLI") from Verizon, which was stored out of state.  *Id.* at \*1–2.  The Montana district court accepted Webb's argument that, because Montana state law does not authorize extraterritorial search warrants, the CSLI warrant issued by the Montana district court did not comply with the SCA.  *Id.* at \*3–4.  For the reasons outlined above, we disagree and hold that *Webb* was wrong on this issue.  *Webb* overlooked that the SCA grants *additional* jurisdiction to Montana state courts, and that the Montana Constitution permits such a grant.  Even though section 46-5-220(2) of the Montana Code does not authorize extraterritorial search warrants, the SCA confers the necessary extraterritorial reach to state courts of "general criminal jurisdiction of a State authorized by the law of that State to issue search warrants."  18 U.S.C. § 2711(3)(B).  Because Montana district courts qualify under that definition, and the Montana Constitution permits additional jurisdiction when conferred by federal law, Montana district courts are authorized to issue warrants directed to out-of-state electronic communications providers in accordance with state warrant procedures.  18 U.S.C. § 2703.[6]

---

[6] In addition to the SCA, Montana law provides a separate jurisdictional basis for the Meta search warrant.  *Levine*, 553 P.3d at 419.  Section 46-5-605(3)(a) of the Montana Code allows Montana district courts to serve a warrant on an electronic communication services provider "that is a domestic entity or a company or entity otherwise doing business in this state under a contract or a terms of service agreement with a resident of this state if any part of that contract or agreement is to be performed in this state."  "A plain language reading of § 46-5-605(3)(a), MCA,

The Montana district court's search warrant for Westfall's Facebook records was issued in full compliance with Montana's warrant procedures.[7] *See* Mont. Code Ann. § 46-5-221. Accordingly, we affirm the federal district court's conclusion that the Montana district court had jurisdiction under the SCA to issue an extraterritorial warrant to Meta to properly obtain Westfall's electronic communications.

\* \* \*

We affirm the federal district court's denial of Westfall's motion to suppress. The search warrant for Room #428 was supported by probable cause, and the state warrant for Westfall's Facebook records maintained out of state was authorized under the SCA.

**AFFIRMED**.

---

provides an independent basis under state law for [Montana] district courts to authorize search warrants to out-of-state third-party entities"—regardless of whether the entity is doing business with the "target" of the investigation or another state resident. *Levine*, 553 P.3d at 419–20.

[7] Westfall makes no argument otherwise.